## MILLS et al. v. MILLS et al.

(Supreme Court, Appellate Division, First Department. April 2, 1900.)

1. WILLS—SUSPENSION OF ALIENATION.

1 Rev. St. p. 730, § 63, as amended by Laws 1893, c. 452, provides that when a person beneficially interested in the income of any trust created for the receipt of profits of lands shall be entitled in his own right to the remainder of the trust fund, he may convey to himself or the person presumptively entitled to the remainder all his interest in the income, and thereupon the estate of the trustee shall cease, and become merged in the remainder. *Held;* that under the statute the power of alienation is not suspended by the creation of a trust by a testator to pay the income in equal shares to his widow and three children, and the survivors of them, and devising the trust property absolutely to another person on the death of the last survivor, since the trust estate might be converted into an absolute fee in possession at any time by the joint action of the cestuis que trustent and the remainder-man.

2. SAME—DEVISE FOR PAYMENT OF MORTGAGE.

A testator residing in Massachusetts made a will valid by the laws of that state. A part of his estate consisted of real estate in New York, which was mortgaged. After directing his executors to pay all debts "and all mortgages * * * upon any real estate," he made certain specific bequests, easily payable out of his personal estate, leaving a balance of personal property, and then gave his residuary estate to trustees for the benefit of his wife and children during their lives, and after their decease to another. *Held,* that the mortgage was properly paid by the executors out of the personal property during the lives of the widow and children.

3. COSTS.

It was error, in an action for the construction of a will, in which the heirs at law were successful, so far as their interests were involved, to charge the costs of all the parties in the action on the property which it was decreed descended to the heirs at law.

Van Brunt, P. J., and Patterson, J., dissenting.

Appeal from special term, New York county.

Action for the construction of a will by Arthur P. Mills and another, trustees, against Lavinia Frances Mills and others. From a judgment for plaintiffs (59 N. Y. Supp. 1048) entered on a decision of the court at special term, defendants appeal. Modified.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

William E. Carnochan, for appellants.

John L. Cadwalader, for appellant the Museum of Fine Arts.

David B. Ogden, for respondents.

RUMSEY, J. The plaintiffs are trustees under the will of Dexter T. Mills, deceased. Mr. Mills, a citizen and resident of the state of Massachusetts, died on the 6th of March, 1896, being the owner, among other property, of certain real estate in the city of New York. By his will, after certain legacies, he devised the remainder of his estate to the plaintiffs, as trustees, to pay the income to Lavinia Frances Mills, his wife, Anna Dexter Mills, Helen Whittington Coolidge, and Susan Lincoln Mills, his daughters, or such of them as might be living at his death, in equal shares, for their lives; and he further directed that upon the death of either of the said bene-

ficiaries after himself the income previously paid to such deceased should be divided equally between such other cestuis que trustent as survived, "it being my desire that the entire income from said trust fund shall be divided into as many parts or portions as there are survivors of my said wife and daughters from time to time." He gave some legacies payable upon the death of the last survivor of the cestuis que trustent, and the residue of the trust fund he devised to the trustees of the Museum of Fine Arts in Boston in fee. The question presented by the trustees is whether these devises of the will are valid so far as they relate to the real estate in the city of New York. The learned justice at the special term held that the devise in trust for the wife and daughters of the testator was not valid so far as it included the real estate in the city of New York, and that, that devise being invalid, the remainder to the Boston Museum of Fine Arts fell with the precedent estate; so that, as to the real estate in the city of New York, the testator died intestate. From that portion of the judgment entered upon his decision, the Boston Museum of Fine Arts has appealed.

There can be no doubt that down to the year 1893 the devise in trust in this will would have been invalid as to the lands in this state, because it suspended the power of alienation during the lives of all of the cestuis que trustent, in violation of the statute, and that the decision of the learned justice at the special term was not only warranted, but required, by the law as it had existed for many years, and down to that time. But in 1893 an amendment was made to section 63 of the Revised Statutes, to which his attention was not called, and it is claimed by the Museum of Fine Arts that the effect of that amendment is to authorize a conveyance in fee of the lands devised in trust, so that since that time there is no suspension of the power of alienation of such lands, and therefore this devise is valid. If the amendment in question has the effect claimed for it, it has worked a grave change in the law as it has existed in this state for many years, and it is not strange that one whose attention is called to that statute for the first time should be surprised at its provisions, and should be slow to believe that it operated to create so great a change as is claimed by the appellants. Before that statute, there can be no doubt that a devise of lands upon the express trust established by this will would operate to suspend the power of alienation during the existence of the trust. To permit this in like cases, and to a certain extent, had been the policy of the state for many years. Such a suspension was not first authorized by the Revised Statutes, although those statutes for the first time regulated and controlled them more closely than had been done before. It is claimed by the respondents here, and it is undoubtedly the case, that so great a change from what had been for many years the established policy with reference to estates in land will not be deemed to have been made unless the provisions of the statute by which it is done are so plain and clear that its reasonable interpretation requires that construction to be given it. The statute in question is section 63, pt. 2, c. 1, tit. 2, art. 2, Rev. St. (1 Rev. St. p. 730, § 63). As originally enacted, and as the law stood until 1893, the section read:

"No person beneficially interested in a trust for the receipt of the rents and profits of lands can assign or in any manner dispose of such interest; but the rights and interests of every person for whose benefit a trust for the payment of a sum in gross is created are assignable."

In 1893 (Laws 1893, c. 452) that section was amended by adding to it a provision which, omitting the verbiage, and transcribing only so much of it as is material to this case, is as follows:

"Whenever the person beneficially interested in the income of any trust created for receipt of the rents and profits of lands shall or may be or become entitled in his own right to the remainder of the principal fund so held in trust, it shall be lawful for such person to make and execute a conveyance or release whereby such person shall convey and release to himself or the person presumptively entitled to the remainder or reversion upon the then determination of the trust estate, all his right, title, and interest in and to the income of such estate, and thereupon the estate of the trustee as to the principal fund so held in trust shall cease and determine, and the trust estate shall be and become forthwith merged in such remainder or reversion."

The question is whether the effect of this statute is to make the beneficial interest in a trust to receive the rents and profits of land so far assignable that the cestui que trust may, at his pleasure, with the assistance of the remainder-man, terminate the trust, and convey an absolute fee in possession. In other words, does that statute, fairly construed, give the power to alienate the absolute fee, so that such power is no longer suspended by the creation of such an express trust as this? The prohibition of the statute is that:

"Every future estate shall be void in its° creation which shall suspend the absolute power of alienation for a longer period than is prescribed in this article. Such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed."

Were there, after the passage of the act of 1893, mentioned above, persons in being who could convey an absolute fee in possession of the land devised by the will of Mr. Mills? The test of the alienability of the property under this section is that there are persons in being who can presently give a perfect title. Where there are living persons, who have unitedly the right of ownership, the statute has no application. The ownership is absolute whether the power of alienation rests in one or in several. If there is a present right to dispose of the entire interest, even though its existence depends upon the consent of several persons, there is no unlawful suspension of the power of alienation. Williams v. Montgomery, 148 N. Y. 519–526, 43 N. E. 57. To convey an absolute fee by this statute, it is not necessary that every person making the deed should have such an interest as may be conveyed. If one person in being has an interest which may be conveyed, and another person has an interest which he may dispose of by release, and the effect of the conveyance and the release is to give to the grantee and releasee an absolute fee in possession of the land, there is no suspension of the power of alienation. Beardsley v. Hotchkiss, 96 N. Y. 201–214; In re New York, L. & W. R. Co., 105 N. Y. 89–96, 11 N. E. 492; Emmons v. Cairns, 3 Barb. 243–248; Garvey v. McDevitt, 72 N. Y. 557–563; Hunter v. Hunter, 17 Barb. 25–90; Chapl. Susp. § 64.

In the case of Beardsley v. Hotchkiss, above cited, the question was whether there was any unlawful suspension of the power of alienation by the will of Mrs. Hotchkiss, who had devised a vested interest to her son Nathan, and a contingent remainder in his share to other children. It was claimed that the other children could not convey their contingent interest to strangers, and that, therefore, the power of alienation was suspended during the lives of all of them. In reply to that the court said:

"If it were true, as claimed, that the other children could not convey their contingent interest to a stranger, it is admitted that they could release their interest to Nathan, and he then could have conveyed the whole estate; so, in any view, there were persons in being at the death of Mrs. Hotchkiss who could convey an absolute fee in possession to Nathan's share in the real estate, and hence there was no illegal suspension of the power of alienation in respect thereto."

There is no magic in the word "conveyed," as used in the statute quoted above. The important question is whether there are persons in being by whose act all outstanding interests together can be presently converted into a fee so that the person taking it has an immediate right to the possession of the land. If that state of affairs exists, the suspension of the power of alienation is not accomplished. So it remains to be considered whether that suspension exists in this case under this statute. The statute deals only with the power of alienation. If the power to alien exists, there is no suspension, no matter how complicated the means, nor how numerous soever the instruments required to carry it into effect. Before the passage of the act of 1893, as we have seen, the right of the cestui que trust could not be assigned or disposed of, and it was impracticable, under the law, for the trustee to convey away the land free from the trust which was charged upon it. Although he might convey, yet the proceeds of his conveyance stood charged with the same trust as did the land which he conveyed. There was no way by which the estate in remainder and the trust for the lives of the beneficiaries could be put together free from the trust, so that an absolute fee in possession should result. If a way has been created by this statute by which that can be done, then it must be that there is no suspension of the power of alienation within the rules laid down in the cases cited above. The statute provided that, when the person interested in the income of the trust fund "shall or may be or become entitled in his own right to the remainder" of the fund, he may do certain things. Is there any limitation as to the manner in which a beneficiary may become entitled to the remainder? If the statute only applies to a case where the remainder shall have been devolved upon the beneficiary by operation of law, then it is very clear that until that has taken place he is in no situation to release his beneficial interest, because, as he cannot become the owner of the remainder by purchase, there is no one in being who can transfer it to him; and therefore it is not possible for the remainder and the beneficial interest to become united, so that the right given by this statute may come into existence. But the statute, by its terms, is not limited to the

case of one who becomes entitled to the remainder by operation of the law; nor is there anything in it which requires so limited a construction to be given to it. The statute makes his power to release depend upon his ownership of the remainder, and sets no bounds to the manner of obtaining that ownership. If one buys the remainder, he becomes entitled to it; and there never was any reason why a cestui que trust should not purchase the remainder, thereby becoming entitled to it if he saw fit. If he did purchase it, he became entitled to it just as much as though it had been devised to him, or it had descended to him as an heir at law. Nothing in this statute limits the meaning of the word "entitle," and no reason is seen why there should not be given to it in the construction of the statute the ordinary and usual meaning which the word has. Giving it that meaning, it includes the case of one who becomes the purchaser of the remainder. There are then persons in being who can when they choose transfer and receive it. It is quite clear, then, that a beneficiary of a trust estate uniting with the remainder-man may be put in such a situation that he can make a release of his interest in the trust fund, and that, when that release is made, the trust is at an end. When that is done, he has an absolute fee in possession. But it is said that he has not an absolute fee in possession until he has become the owner of the remainder, so that he can release to himself the beneficiary interest in the trust estate; and therefore it is argued that the statute, instead of putting an end to the suspension of the power of alienation, only authorizes the taking of a step by the beneficiary which should enable him to do it. Undoubtedly, it is true that, until the beneficiary and the remainder-man have made the sale of the remainder, the interest of the beneficiary cannot be released, and the property cannot be transferred in fee. But, if two persons in being can do an act whenever they choose, which, when done, empowers one of them to do another act, they clearly have the power between them to do both acts, although the exercise of the power is begun by doing the first. In this case the transfer of the remainder to the beneficiary authorizes the beneficiary to release to himself, and when that is done an absolute fee in possession vests in him as the result of his act, and he may transfer it to anybody he chooses. The remainder-man and the beneficiary are the two persons in being who have the power to convert this estate into an absolute fee in possession. If the remainder-man sees fit to sell, and the beneficiary to buy, his remainder, which he has the power to do, then the statute has given to him absolute power to release the beneficial interest, and an absolute fee vests in him at once. To be sure, to so vest it requires two instruments, but the persons are now in existence who can make those instruments. If they choose to do it, nobody can prevent them, and the result of their action is to vest an absolute fee in the beneficiary, with power in him to convey to whomsoever he sees fit. The statute does not limit the number of deeds to be used in transferring the fee. It is satisfied if there are at present in existence persons by whom an absolute fee in possession may be conveyed without regard for the manner in

which it is to be done, or the number of the instruments necessary to do it. If it be said that the remainder-man and the beneficiary of the trust cannot to-day transfer an absolute fee in possession of these premises, it would be a perfect answer if they at once should proceed to do it as they lawfully might by a conveyance by the remainder-man to the beneficiary by the release of the beneficiary to himself, and by a conveyance then of the whole estate to anybody they saw fit. It seems idle to say that, when such a condition of affairs can be brought about by persons in being under the law, without the permission of anybody, and that as the result of the action an absolute fee is conveyed, that there is a suspension of the power of alienation.

The appellant the Boston Museum of Fine Arts appeals from so much of the judgment as adjudges that the payment of the $9,000 mortgage on the New York property was just and proper. As this payment was made by the plaintiffs as executors, and their accounts, including the credit of this payment, have been submitted to and approved by the probate court of Massachusetts, it is very doubtful whether the propriety of that payment could be considered in this action, even if the conclusion which we have reached in the first part of this opinion did not make it unnecessary to do so. But it is sufficient to say that that portion of the judgment was correct.

The heirs at law appeal from so much of the judgment as charges the costs of all the parties in this action upon the property which it was decreed descended to them. So far as their interests were involved in this action, they were the successful parties, and, although the court had discretion whether to give costs to them or not, it had no discretion to require the costs to be paid out of the property (Couch v. Millard, 41 Hun, 212), especially when that property does not of itself constitute a fund in court which is to be disposed of by the judgment. The right to this property was undoubtedly in dispute, but it was not a fund, because the title to it was to be determined by the court. So far as that portion of the judgment is concerned, the requirement that the costs should be paid out of this New York property is undoubtedly erroneous.

As there is practically no disputed question of fact in the case, it seems to be proper that this court should direct the judgment which is to be entered. It is accordingly directed and adjudged that the trust created by the will of Dexter T. Mills, so far as it affects the lands in the state of New York, does not suspend the power of alienation, and that these lands are properly disposed of by the will. It is further adjudged that the payment of the $9,000 mortgage by the trustees out of the personal estate of the testator was properly made, and properly allowed to them. It is further ordered that the appellant the trustees of the Museum of Fine Arts in Boston shall have its costs of this action, to be paid by the plaintiffs out of the property of the trust estate in their hands, and that the cestuis que trustent and the plaintiffs shall also be allowed their costs out of the estate. All concur, except VAN BRUNT, P. J., and PATTERSON, J., who dissent.

INGRAHAM, J.   I concur with Mr. Justice RUMSEY, and wish
to add some considerations that have occurred to me.   A review of
the origin and history of the rule against perpetuities, and the ex-
tent of the limitation imposed by the rule at the time of the adop-
tion of the Revised Statutes, will aid us, I think, in ascertaining
the proper construction to be given to the provision of the statute
in force at the time of the death of the testator.   It seems that the
rule against perpetuities grew up in England after the statute of
uses (27 Hen. VIII.) and the statute of wills (32 Hen. VIII.); and it
was in the development of the rules in relation to executory devises
of chattels real that the rule had its origin and took its shape
(Gray, Perp. § 148).   It was firmly settled in the Duke of Norfolk's
Case, 3 Ch. Cas. 53, that a future interest in lands might be limit-
ed to commence on any contingency which must occur within lives
in being.   The period within which future interests vest was sub-
sequently extended so as to make it cover the time necessary for
the birth of posthumous children, and also the minority of a person
who was under age at the termination of a life in being (Gray, Perp.
§ 171); and gradually the period of such a minority, viz. 21 years,
was fixed as an absolute period during which an estate could be so
limited, without regard to the minority of any existing individual.
This question was finally put at rest in England by Thelusson v.
Woodford, reported in the house of lords in 11 Ves. 112, where the
lord chancellor in his judgment says:

"The language of all the cases is that property may be so limited as to
make it inalienable during any number of lives not exceeding that to which
testimony can be applied to determine when the survivor of them drops."

The true form of the rule is stated by Prof. Gray as that:

"No interest subject to a condition precedent is good unless the condition
must be fulfilled, if at all, within twenty-one years after some life in being
at the creation of the interest."   Gray, Perp. § 201.

It was, however, held that a vested interest was not subject to
the rule against perpetuities, for it is not subject to a condition
precedent; and thus a remainder after an estate tail is never too
remote, for there is always some one who can destroy it by barring
the entail.   Gray, Perp. §§ 443, 447.   Property was not, therefore,
inalienable if there were in being persons by whose united action
the property could be vested in one or more persons by whom an
absolute title in fee could be conveyed.   In 1 Jarm. Wills (4th Am.
Ed.) p. 262, the learned author says:

"Although it is to be observed in this and all other cases, if the executory
devise is subsequent to an estate tail, it will be good, because the power which
resides in the owner of that estate to discharge all posterior limitation, execu-
tory as well as vested, by means of an enrolled conveyance, now substituted
for common recovery, takes the case out of the mischief of, and consequently
out of the rule against, perpetuities."

In framing the Revised Statutes the revisers had before them
this rule, and had clearly in mind its extent and limitation.   In the
revisers' notes to the provisions of sections 14 and 15, hereafter
referred to, it is said:

"Notwithstanding the abolition of estates tail, our law allows certain exec-
utory dispositions of land and the profits of land, by which the former may

be rendered inalienable, and the latter may be made to accumulate for a life or lives in being and twenty-one years thereafter. This limit is derived from the English law, and was originally adopted by the English judges from analogy to settlements by entail. A settlement on a parent for life, with remainder to his eldest son in tail, and any number of remainders over for life and in tail, could be barred by the son's suffering a recovery as soon as he came of age. Not to give a greater perpetuity to a disposition by executory devise than the possible (and, from the exigencies of society, even in that country, the general) limits of an entail, the courts held that no executory devise could be good unless it must necessarily take effect within a life or lives in being, or twenty-one years thereafter. * * * The difference between the preceding sections and the existing law, consists in the following particulars: (1) Alienation cannot be protracted, by means of mere nominees unconnected with the estate, beyond the period of two lives. (2) No more than two successive estates for life can be created. (3) The period of twenty-one years after a life or lives in being is no longer allowed as an absolute term, but the rule is restored to its original object, by being confined to the case of actual infancy. * * * To prevent a possible difficulty in the minds of those to whom the subject is not familiar, we may also add that an estate is never inalienable unless there is a contingent remainder, and the contingency has not yet occurred. Where the remainder is vested,—as where the lands are given to A. for life, remainder to B. (a person then in being) in fee,—there is no suspense of the power of alienation; for the remainder-man and the owner of the prior estate, by uniting, may always convey the whole estate. This is the meaning of the rule of law prohibiting perpetuities, and is the effect of the definition in section 14." 5 Edm. St. at Large, p. 306.

By section 14 of the statute as thus proposed, and which was enacted, it is provided that:

"Every future estate shall be void in its creation, which shall suspend the absolute power of alienation for a longer period than is prescribed in this article. Such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed."

By section 15 it is provided that:

"The absolute power of alienation shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of not more than two lives in being at the creation of the estate, except in the single case mentioned in the next section."

We have thus a clear meaning of the change intended in the law as it stood by the adoption of these provisions of the Revised Statutes, and that change consisted in substituting, for a period during which an estate could be rendered inalienable, two lives in being at the time of the creation of the estate and an actual minority, instead of any number of lives in being at that period and 21 years thereafter. No change was made in respect to what would constitute an inalienable estate, or as to what condition rendered an estate inalienable; but, as stated by the revisers, the provision in the section before referred to, that "such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed," is, in effect, a statement that "an estate is never inalienable unless there is a contingent remainder, and the contingency has not yet occurred." This general rule has been almost uniformly recognized and applied, as appears from the authorities cited by Mr. Justice Rumsey. In Williams v. Montgomery, 148 N. Y. 519, 43 N. E. 57, the rule is stated as follows:

"The test of alienability of real or personal property is that there are persons in being who can give a perfect title. * * * Where there are living

parties, who have, unitedly, the entire right of ownership, the statute has no application. The ownership is absolute whether the power to sell resides in one individual or in several. If there is a present right to dispose of the entire interest, even if its exercise depends upon the consent of many persons, there is no unlawful suspension of the power of alienation. The ownership, although divided, continues absolute."

In determining the question whether this will unduly suspend the power of alienation, and thus violate these sections of the statute to which reference has been made, we must ascertain whether, by the creation of the trust, this real property was rendered inalienable for more than two lives in being at the time of the creation of the trust. An express trust is created within subdivision 3 of section 55 of the article upon uses and trusts in the Revised Statutes, which provides that an express trust may be created to receive the rents and profits of lands, and to apply them to the use of any person during the life of such person, or for any shorter term, subject to the rules prescribed in the first article of the title. The trust was thus valid unless it violated some of the provisions of the article providing for the creation of estates. The court below held that it violated sections 14 and 15, before cited, in that the power of alienation was suspended for a period greater than two lives in being at the creation of the trust. By section 63 of this article upon uses and trusts, prior to the amendment of 1893, to which attention will be called, it was provided that "no person beneficially interested in a trust for the receipt of the rents and profits of lands can assign or in any manner dispose of such interest." This section, as originally enacted, clearly made the fee of the land inalienable during the continuance of the trust; and under that section, but for the amendment hereafter referred to, there could be no question that the trust would be void. The beneficiaries or life tenants being disqualified from conveying their beneficial interest in the property during four lives in being when the estate was created, the power of alienation was suspended, for there were no persons in being by whom an absolute fee in possession could be conveyed. The power of sale in the trustee would not help the trust, for, if it were thereby changed into personal property, the trust would be void, under section 1, tit. 4, c. 4, pt. 2, Rev. St. (1 Rev. St. p. 773). But by chapter 452, Laws 1893, section 63 of the article upon uses and trusts was amended by adding to it the following provision:

"Always provided that whenever the person beneficially interested in the whole or any part of the income of any trust heretofore or hereafter created for receipt of the rents and profits of lands or the income of personal property shall have heretofore become or may hereafter be or become entitled in his or her own right * * * to the remainder in the whole or any part of the principal fund so held in trust subject to such estate for a life or lives or a shorter term, then and in such case it shall and may be lawful for such person so beneficially interested in the whole or any part of the income of such trust estate for a life or lives or a shorter term and become entitled to the remainder in the whole or any part of the principal fund so held subject to said trust estate for a life or lives or a shorter term to make and execute a conveyance or release duly acknowledged, * * * whereby such person so beneficially interested in the whole or any part of the income of such trust for a life or lives or a shorter term shall convey or release to himself or herself * * * all his or her right, title and interest in and to the income of such trust estate, * * * and thereupon the estate of the trustee or trus-

tees as to the whole or such portion of the principal fund so held in trust to which such person so releasing shall have heretofore become or may hereafter become entitled to the remainder as aforesaid shall cease and determine, and the trust estate for a life or lives or a shorter term, so far as it affects the whole or such portion of the income and principal fund to the remainder in which said person so releasing has heretofore become or may hereafter be or become entitled, shall be and become forthwith merged in such remainder or reversion."

The effect of this amendment is to render trust estates alienable where a vested remainder which is not subject to be devested is created. The moment that the remainder absolutely vests, there were parties in being who could by conveyances create an absolute fee in the beneficiary for life which he could convey. By the will in question a trust has been created with a vested remainder over; and under the operation of this section, as amended by the act of 1893, there is nothing to prevent the persons in whom such remainder vested from conveying such remainder to the persons beneficially interested in the trust; and then upon a conveyance or release of their interest in the property, or the income therefrom, to themselves as persons in whom is vested the remainder, the trust would cease by operation of the statute, and the fee would vest in these life tenants, and the property at once would become alienable. It would seem that the legislature intended to allow such a destruction of the trust, and thus render alienable what prior to the passage of this amendment would have been inalienable; and that this statute accomplished that purpose. That being so, as there are persons beneficially interested in the rents and profits of land, and a person in whom there is vested an absolute remainder in the same land, who can unite to terminate the trust, and at once render the property alienable, there is no suspension of the power of alienation. The first impression in considering the provisions of this statute and its effect was that it tended seriously to modify the settled policy of the state by allowing trusts to be created for a period longer than two lives in being, and thus render property inalienable for a longer period; but a further consideration has produced the conviction that the effect of the statute is just the contrary, and that in a case in which a vested remainder is created (and to which this proviso added to section 63 only would apply) the effect is to add a limitation to the power of a person to render property inalienable. Take the ordinary case of a bequest to trustees for the benefit of A. for life, with remainder to B. Before the adoption of this provision, this trust was inalienable during the life of A. Under the provisions of this section, as amended, the trust is at any time alienable by the united action of A. and B., by which the title of the trust property vests absolutely in A., who then could convey "an absolute fee in possession." Certainly, in such a case, it could not be said that the power of alienation of this property was suspended where B., by a simple conveyance to A. of the remainder, would put it in A.'s power to grant an absolute title to the land in fee. And does it make any difference as to the alienability of the land that there are four persons beneficially interested in the rents and profits, instead of one? Williams v. Montgomery, supra, and the other cases cited, seem to me to settle that question. I am quite

aware that the effect of this decision may at first appear startling, and it is very much in conflict with the views that I entertained upon the argument, but, after a careful study of the question, and the effect to be given to this amendment, I can see no escape from this conclusion.

PATTERSON, J. I dissent. The amendment passed in the year 1893 of section 63 of the statute of uses does not, in my judgment, have the effect on the power of alienation attributed to it by the majority of the court. That amendment has been recast as part of section 83 of the real property law of 1896, but this case has been presented upon the text of the statute as it read at the time of the death of this testator. As the trust is constituted in the will before us, there are no persons in being who can convey an absolute fee in possession at or before the expiration of two lives in being. It is argued that the power of alienation exists because the remainder-man may convey to the beneficiary, and he may release, and thus cut off the estate of the trustee; but the trustee's estate is still inalienable until the beneficiary acquires the interest in remainder. Until that is done, neither the deed of the beneficiary alone nor in conjunction with the remainder-man can pass a fee in possession, and, of course, the trustee cannot, under any circumstances, convey. This condition or situation results from the inalienability of the estate of the trustee and the interest of the beneficiary. Everitt v. Everitt, 29 N. Y. 90. The fee consists of the estate of the trustee and the remainder. The whole fee may be conveyed by the beneficiary after the estate of the trustee is destroyed, and merged in the remainder, pursuant to the amendment of 1893. Until that occurs, the trustee's estate continues indestructible. No one can destroy the trust and effect the merger but the beneficiary, and he cannot do so until he becomes the owner of the remainder, in whole or in part. Then, and not until then, is he endowed with the capacity to alienate through or by means of the destruction of the trustee's estate. The power of which the trustee and the beneficiary are deprived by provisions of the statute still in force does not arise, or is not conferred by the new provision, until the beneficiary becomes entitled in his own right to the remainder, or a share of it. Until that right is acquired, the interdiction resulting from section 65 of the statute of uses upon alienation of the estate by the trustee where the trust is expressed in the instrument creating the estate, and that upon the disposal of the beneficiary's interest contained in section 63 of the same statute, remain in force. In a few words, there are no persons who, singly or together, can convey the fee of this property, because the trustee and the beneficiary are prevented from doing so, except in the one specified case, and when the situation referred to in the amendment actually exists. The ordinary rule that, where there are representatives of every interest, who may unite and convey, if they so desire, the power of alienation is not suspended, does not apply here, because of the requirement that there must be a union of the beneficial interest and the remainder in the same person before the inalienability of the trustee's estate, imposed by the statute, is removed; and that may never hap-

pen. I cannot believe that it was the intention of the legislature to allow the total destruction of trusts created under subdivision 3 of section 55 of the statute of uses as soon as they are created, but only to permit such destruction when the interest in the remainder is actually united in ownership with the beneficial interest, and a trustee's duty becomes merely that of an agent or collector for the substantial owner of the land.

VAN BRUNT, P. J. I concur in the opinion of Mr. Justice PAT-TERSON. It seems to me that it was the intention of the legislature by the act of 1893 to allow the destruction of the trust, and to take the life estate out of the restrictions contained in section 63 of the statute of uses and trusts, only when the life tenant had become the owner of the remainder, and thus had the absolute power of disposition, after the determination of the life estate. I think that it was intended to give the same power to the life tenant as he would have possessed under section 81 of the above statute, had there been no trust. In other words, the legislature intended to provide that, "where an absolute power of disposition shall be given to or acquired by the owner of a particular estate for life or years, such estate shall be changed into a fee, absolute in respect to the rights of creditors and purchasers." The result of this legislation seems to be to strike out of the said section 81 the words "not accompanied by any trust." This interpretation of the act in question harmonizes the whole of the legislation upon uses and trusts, and makes no radical change which is not in harmony with the general scheme of the statute. If this is the true interpretation to be given to the statute, then it is clear that there are no persons in being who can convey an absolute fee in possession. It should also be remembered that if, under any contingency, the estate may be tied up for a period of more than two lives in being, the limitation is void. In the case at bar the estate may certainly be tied up for a period beyond two lives in being, and consequently the limitation is void. The trust can only be destroyed upon the happening of an event which may never occur, viz. the union of the life estate and the remainder in one person.