(41 App. Div. 57.)

BROWN et al. v. BRITTON et al.

(Supreme Court, Appellate Division, Fourth Department. May 24, 1899.)

1. APPEAL AND ERROR—REVIEW OF FINDING OF REFEREE.

Where the evidence on which a referee's finding of fact is based possesses any probative force, the finding will not be disturbed.

2. CORPORATIONS—SALE OF SHARES—AGREEMENT AMONG STOCKHOLDERS.

An agreement among a majority of the stockholders of a company that any one of them who might be absent from a meeting should give his proxy to one of the others, that such proxy should be irrevocable for three years, that no one of them should sell his shares without the consent of the others, and that, in the event of a desire to sell, the other parties to the agreement should be given the preference, is inseparable, and the limitation of three years applies to each of the provisions.

3. SAME—ESTOPPEL.

Where stockholders enter into an agreement whereby, for a period of three years, each is to give his proxy to one of the others, in the event of absence from a meeting, and no one shall sell his shares without the consent of the others and without giving the others a preference, and at the end of three years they renew the agreement, with all of its provisions, they are bound by their construction that the three-years limitation applies to all the provisions.

4. SAME—SPECIFIC PERFORMANCE.

Equity will not enforce the specific performance of an agreement among stockholders of a company that none of them will sell his stock without the consent of the others and without giving them a preference, where, before the decree can be rendered, the period of limitation provided for in the agreement has expired.

5. SAME.

Equity will not enforce the specific performance of an agreement among stockholders of a company that none of them will sell his stock without the consent of the others, and without giving them a preference, when no actual injury has resulted to plaintiff from a breach thereof.

6. COSTS—TAXATION BY REFEREE—REVIEW—DISCRETION OF REFEREE.

The imposition of costs by a referee is a matter within his discretion, and not subject to review.

Appeal from judgment on report of referee.

Suit by Walter Brown and others against Byron M. Britton and others. From a judgment dismissing the complaint at plaintiffs' costs, entered upon the report of a referee, plaintiffs appeal. Affirmed.

In 1875 the Thousand Island Camp-Meeting Association was duly incorporated pursuant to chapter 117 of the Laws of 1853, and the acts amendatory thereof, and in 1879, by chapter 4 of the laws of that year, the name of the corporation was duly changed to the Thousand Island Park Association. The association owns a tract of land, consisting of about 800 acres, on Wellesley Island, in the St. Lawrence river, which is laid out into public streets, parks, and building lots. The tract also embraces a farm, and shore and water rights, which are valuable for the erection of private docks and boat houses. Upon this park the association has constructed and maintained a hotel, with ac-

commodations for about 250 guests; a large boarding house; a building which is devoted to stores, markets, and other like purposes; a chapel capable of seating 600 people; and a tabernacle with a seating capacity of from 2,500 to 3,000 persons. In addition to the buildings already specified, there are 500 or 600 private cottages for the use of people who make the park their summer home, a laundry building, school house, a steam-engine house and plant, an electric lighting plant, a reservoir and water-supply system, a sewer system, a public dock, and a building used for the purpose of a summer institute; the object of the association being to establish and maintain a place of summer resort or residence, where no intoxicating liquors are sold, no gambling or objectionable sports permitted, and where "Sunday should be observed in accordance with the ideas and views of Christian people." The capital stock of the association is $50,000, divided into 5,000 shares, of the par value of $10 each. On the 9th of November, 1894, certain of the stockholders of the association, among whom were the plaintiffs and the defendants Britton, Gurnee, and Sears, entered into a written agreement, under their hands and seals, of which the following is a copy, viz.: "Know all men by these presents that we, the holders and owners of the majority of the capital stock of the Thousand Island Park Association, actuated by a sincere desire to promote the best interests of all the lot and stockholders of the said association, and with a view of establishing its business management on a sound financial basis, and believing that these ends can be best accomplished by mutual co-operation and combined action, do hereby agree that, in case any one of us shall be unable to be present and vote personally at any meeting of the stockholders for the election of trustees, then and in that event we do severally bind ourselves to appoint some one of the undersigned as our attorney and agent to vote as our proxy at the said election, according to the number of votes we would each be entitled to vote if then and there personally present. This proxy shall be irrevocable for the period of three years from the date of the execution thereof, and we do hereby promise and agree, each for himself, that we will not sell, assign, or transfer any of the stock herein represented within the period above named, except with the written consent and approval of all the other stockholders whose names are hereto subscribed. It is further agreed that, if any of the parties to this agreement desire to sell their stock, they shall give the preference to the other parties to this agreement before selling to any other party. In witness whereof we have hereunto set our hands and seals this ninth day of November, A. D. 1894, at Watertown, N. Y." This agreement was the third of a series or succession of agreements entered into by the majority stockholders of the association of similar import, the first of which was dated December 4, 1888, and the second October 20, 1891. On the 15th day of August, 1896, another agreement was executed by such of the stockholders as are plaintiffs in this action, which provided, in substance, among other things, that none of the parties thereto would, for a period of 10 years, sell or give any proxy on their stock to any one not a party to the agreement, that for the like period certain of the signers should be continued as trustees of the corporation, and that any stock purchased thereafter by any of the parties to such agreement should become subject to the provisions thereof. This agreement was likewise under seal. Thereafter, and on the 8th day of July, 1897, the defendant Barker, acting for and in the interests of the defendants Daniel W. Gridley and Helen M. Gridley, through the agency of the defendant Kinnet, purchased of the defendant Britton 50 shares of the capital stock of the Thousand Island Park Association, for which he paid to him the sum of $600 in cash. Thereafter, and on the 9th day of July, 1897, the defendant Barker in like manner purchased of the defendant Gurnee 191⅔ shares of such capital stock, in payment for which Barker gave his promissory note, payable in one year, with interest at the rate of 5 per cent.; and in like manner on the 10th day of July, 1897, Barker purchased of the defendant Sears his capital stock, consisting of 370 shares, for which he paid him $300 in money, and gave him three several promissory notes, payable in one year from date, with interest thereon at the rate of 5 per cent.,—one of such notes being for $1,000, and the other two for $1,200 each. Prior to the sale by the defendants Britton, Gurnee, and Sears of their respective shares of stock to the defendant Barker, as hereinbefore mentioned, neither of them offered to sell

his stock to the plaintiffs, or any of them, nor did they, or either of them, obtain from the other parties to the agreement of November 9, 1894, a written consent or approval of such sale; and in each instance the stock was sold and purchased with full knowledge on the part of the defendants Barker, Kinney, Daniel W. Gridley, and Helen M. Gridley of the terms and conditions of such agreement, and that Britton, Gurnee, and Sears were parties thereto. Thereafter, and prior to the commencement of this action, the plaintiffs offered to purchase of the defendants Britton, Gurnee, and Sears their respective holdings of stock, and to pay therefor the par value thereof, or whatever sum above par they, or either of them, had been in good faith offered for such stock, which offer was duly declined, whereupon this action, which relates more particularly to the Britton stock, was commenced, Gurnee and Sears being made parties defendant for the reason that they refused to join as plaintiffs; and at the same time two other actions were commenced against Gurnee and Sears, respectively, in each of which actions the other defendants in this action were also made parties defendant.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

Edwin Nottingham, for appellants.
Louis L. Waters, for respondents Gridley.
H. E. Morse, for respondent Barker.

ADAMS, J. This action, which was commenced August 28, 1897, was brought to enforce the specific performance by the defendant Britton of the agreement of November 9, 1894, by means of an injunction restraining him from selling and transferring his 50 shares of stock in the Thousand Island Park Association, and the defendant Barker from purchasing the same; and the aid of a court of equity is invoked upon the usual ground of irreparable injury, for which the law furnishes no adequate remedy. The injury which the plaintiffs allege as liable to result from the sale and purchase of the stock in question is, in substance, that it will deprive them, as majority stockholders, of the privilege of controlling and directing the affairs of the association along the lines upon which the same was organized, and has thus far been conducted, inasmuch as such stock was, as it is claimed, purchased in the interests of the Thousand Island Steamboat Company and the New York Central & Hudson River Railroad Company, with the design of enabling those corporations to obtain control of the association, and to convert the park into a resort for Sunday excursions; thereby prejudicing the financial, moral, and religious interests of the association, and interfering with the privacy and comfort of its stockholders and lotowners. Much evidence was given during the course of the trial which tended to sustain this contention, but the defendants Gridley, who, as has been stated, were the real purchasers of the stock in question, not only disclaimed any such intention, but they furnished considerable proof tending to corroborate their declaration that, in the event of their becoming owners of the majority of the stock of the association, its present policy would undergo no material change. And the learned referee has found that the sale of the stock formerly owned by Britton, Gurnee, and Sears still left the plaintiffs in possession and control of a majority of the stock; that this fact was demonstrated at the last annual election of the officers, which oc-

curred pending the trial of the action, when the plaintiffs elected a board of trustees or directors of their own selection; that the plaintiffs have not suffered and are not liable to suffer, any pecuniary loss or damage by the sale and transfer of such stock; and that the purchase thereof by the defendants Gridley will not prove prejudicial to the financial, moral, and religious interests of the association, or of the plaintiffs as stockholders thereof. While the evidence relied upon to sustain the several facts thus found is to some extent controverted, we are unable to say that it does not possess any probative force; and consequently, within the rule established by repeated adjudications, we do not feel at liberty, in the circumstances of this case, to disturb the findings of the learned referee. Irlbacker v. Roth, 25 App. Div. 290, 49 N. Y. Supp. 538, and cases there cited. Accepting, therefore, the facts thus found as the facts of the case, it becomes relevant at this stage of our inquiry to suggest that the agreement which lies at the foundation of the plaintiffs' cause of action was executory in its character; and, although its design was evidently to prevent any of the majority stockholders from making such a disposition of their stock as might result in the transference of the balance of power to other parties, it did not operate to deprive them of the right to dispose of their stock, as an incident to ownership. Neither did it prevent a purchaser from obtaining a good title, although he was aware at the time of his purchase of the nature of the agreement, and that the sale to him was made in violation of its provisions. The only effect of such a violation was to give to the plaintiffs "such remedy as the law affords upon the breach of a contract by either party, which, in ordinary cases, is an action for damages." In re Argus Co., 138 N. Y. 557, 34 N. E. 388.

With this much conceded, as we assume it will be, and having in mind the general rule that the enforcement of specific performance of a contract respecting personal property is a matter resting in the discretion of the court, that only in exceptional cases is it decreed by a court of equity (Johnson v. Brooks, 93 N. Y. 337; In re Argus Co., supra), and that such a performance ought not to be enforced by injunction where the injury liable to result from its nonenforcement is not actual and material (Morgan v. City of Binghamton, 102 N. Y. 500, 7 N. E. 424; Genet v. Canal Co., 122 N. Y. 505, 25 N. E. 922), it would seem as though the conclusion of the learned referee that this action ought not to be maintained might be adopted without further comment. Nevertheless, it is perhaps desirable, under the circumstances, that some consideration should be given to the plaintiffs' contention respecting the force and effect of the agreement of November 9, 1894.

If we correctly apprehend the plaintiffs' position, it is that by the terms of this agreement the parties thereto bound themselves, in the event that they, or either of them, could not be present at any meeting of the association, to designate some one of their number to act as attorney or proxy; that such designation was irrevocable for a period of three years from the date of the agreement; that for the same period of time none of the parties to the agreement would sell, assign, or transfer any of his stock, except with the written consent

or approval of all the other stockholders who joined in its execution; and that, if at any time, any of the parties wished to sell their stock, they would, before selling, give the preference to the other parties to the agreement,—the contention being that the last-named condition was independent of those which preceded it, and was unlimited as to time in its operation. If it were possible to give to the instrument the construction thus contended for, a serious question might arise, as to whether it was not designed to operate as a perpetual restraint upon the right of alienation, in such a manner as to render it void as against public policy; for the obvious and only object of such an agreement is to effect a combination of interests, by means of which the power of certain members to control and direct the affairs and policy of the corporation to which they belong may be perpetuated indefinitely. In this particular instance a right thus reserved might not work any harm, but it is pernicious in principle, and, like every other agreement which is designed directly or indirectly to hamper and restrain that right which is incidental to all ownership of property, namely, the right of alienation, it is one upon which the courts are not inclined to look with favor. Fisher v. Bush, 35 Hun, 641. It is true that, as a rule, those who have the largest interests in a corporation are entitled to control its affairs; and where a combination to effect such a result is entered into for a fixed, definite, and reasonable period of time, as was the case in Hey v. Dolphin, 92 Hun, 230, 36 N. Y. Supp. 627, it is not necessarily obnoxious to the rule which condemns as illegal all contracts in restraint of alienation. But when such restraint is for an indefinite period of time a very different situation presents itself. However, it will not be profitable to dwell longer upon this feature of the case, for two reasons, the first of which is that it is perfectly obvious upon the face of the instrument itself that the limitation of three years was designed to apply to each and every of its provisions; and, in the second place, the plaintiffs have given it that construction by executing a new agreement on the 15th day of August, 1896, containing substantially the same provisions as did the one of November 9, 1894, but changing the time of its operation from three to ten years. Devested, then, of all extraneous considerations, the case at bar resolves itself into about this situation: The defendant Britton, in violation of the provisions of a legal contract, has sold 50 shares of association stock to the defendant Barker, who purchased the same on account of his co-defendants Gridley. No pecuniary damage and no substantial injury has resulted to the plaintiffs by reason of such breach, but nevertheless they have invoked the aid of a court of equity to enforce by injunction the specific performance of a contract which, before the case was tried and decided, ceased to have any binding force as to the members who had violated its provisions. In these circumstances, we think the case ought not to be considered upon its merits, for the reason that the questions involved have become abstract in their nature, owing to the lapse of time. Williams v. Montgomery, 148 N. Y. 519, 43 N. E. 57; People v. Common Council of City of Troy, 82 N. Y. 575; Grow v. Garlock, 29 Hun, 598. In the case first cited, the court, while recognizing and reiterating the

rule just adverted to, did not regard it as applicable, for the reason that the complaint in that action was dismissed upon the ground that it did not state facts sufficient to constitute a cause of action, inasmuch as the contract sued upon was one apparently against public policy, and hence not enforceable. In that case, as in this, there was a preliminary injunction, and the judgment of dismissal left the plaintiff defenseless in an action upon the undertaking given by him as a condition of obtaining his injunction. It therefore became of practical importance to determine whether or not the contract in question was void for the reason stated, and it was held upon appeal that it was not. In that case, also, as in this, it appeared that the time for specific performance had expired. This was one of the grounds upon which the complaint was dismissed, and the court of appeals was careful to say that, had it been the only ground, the judgment of the trial court would have been undisturbed.

In the present case the learned referee holds that the agreement in question is not void as against public policy, and places his decision upon the ground that the agreement made November 9, 1894, had ceased to be of any binding force and effect, as well as upon the further ground that a court of equity will not decree specific performance, by injunction or otherwise, where no actual injury is sustained by the plaintiffs in consequence of the failure to perform the same on the part of the defendants. In both of these conclusions, as has already been sufficiently indicated, we are quite disposed to sustain the learned referee; and the only remaining question therefore relates to the defendants' right to costs. Whatever might be our own disposition as to the awarding of costs, were that question an original one in this court, their imposition at the trial was purely a matter of discretion with the referee; and, even if it be assumed that he exercised his discretionary power unwisely, that would not be regarded as an adequate reason for reversing the judgment and granting a new trial. Williams v. Montgomery, supra. The foregoing views necessarily lead to an affirmance of the judgment appealed from.

Judgment affirmed, with costs. All concur.