(58 App. Div. 151.)

EVERDELL et al. v. HILL et al.

(Supreme Court, Appellate Division, First Department. February 15, 1901.)

1. WILLS—ORAL AGREEMENT—SPECIFIC PERFORMANCE.

　　Nieces alleged that their three aunts made an agreement among themselves by which the one first dying was to leave her property to the other two, and the second dying was to leave her property to the survivor, who was to leave all her property to the nieces. The first aunt left her property to the others, who executed wills, each leaving her property to the other, but neither made any provision for the nieces. After the death of the second aunt the survivor executed another will, not in pursuance of the alleged agreement. Held, that as none of the wills executed were referable to the alleged agreement, and none of them had conferred any rights on the nieces of which a nonperformance would deprive them, and as they were in no manner parties to the alleged agreement, they had no standing to compel a specific performance by having it decreed that the trustee under the last will held the property in trust for them.

2. SURROGATE COURT—JURISDICTION—EQUITY.

　　Where it was alleged that decedent failed to will her property to her nieces according to an alleged agreement by her, the decree of the surrogate in the contest of decedent's will was no adjudication of the claim of the nieces for a specific performance of the agreement.

　　Hatch and O'Brien, JJ., dissenting.

Appeal from special term, New York county.

Bill by Lucie Everdell and others against Elizabeth Hill and others, as executors. From a judgment in plaintiffs' favor (58 N. Y. Supp. 447), defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Jacob F. Miller, for appellants.
Jacob S. Van Wyck, for respondents.

RUMSEY, J. The plaintiffs and some of the defendants are nieces of Mary L. Everdell, who died in 1898, leaving a will of real and personal property, of which the defendants Jacob F. Miller and Elizabeth Hill are executors and trustees. Mary L. Everdell had several brothers and sisters. Some of them were married, and had children. Mary Everdell and her two sisters, Matilda and Catherine, were maiden ladies, each possessed of property, the precise amount of which does not appear. It is claimed by the plaintiffs that in the year 1879 the three sisters, Catherine, Matilda, and Mary, made an agreement between themselves by virtue of which the one dying first was to leave all her property to the other two, the one second to die was to leave all her property to the survivor, and the surviving sister was to devise and bequeath by will all the property of which she died the owner to their nieces. It is claimed that this agreement was carried out by Matilda, the first sister to die, and by Catherine, the second sister, but that Mary never made any such will as by this contract she agreed, but that, on the contrary, she, by her will, left a large portion of her property to persons other than her nieces. This action is brought to enforce the specific performance of this alleged agreement, and to obtain a judgment that the legatees and executors under the will of Mary L. Everdell should hold the property received by them as trustees for the nieces, who shall be adjudged to be the owner of all that property, and that they shall be required to transfer said property to the nieces in order to carry out the agreement. The learned justice below found that the agreement was made substantially as alleged, that it had been performed by the two sisters who had died first, but that it had not been performed by Mary L. Everdell. He decided that Mary was bound in equity to perform that agreement in favor of the nieces, and decreed the specific performance of it, and granted substantially the relief asked for in the complaint. From the judgment entered on his decision this appeal is taken.

There is grave doubt in our minds whether the proof was sufficient to establish the making of the contract as alleged. The rule as to the amount of evidence necessary to establish an agreement of this kind is that it will not be enforced where the evidence leaves it uncertain what the precise agreement is. Gall v. Gall, 29 Abb. N. C. 19, and notes (s. c. 19 N. Y. Supp. 332); Healy v. Healy, 55 App. Div. 316, 319, 66 N. Y. Supp. 927. The evidence in this case leaves it somewhat uncertain, and, if the matter were presented to us as an original proposition, it is doubtful whether we would be able to find that the contract was made. But we are not disposed to found our

decision upon that ground, because, in our judgment, there are some legal questions in the case which determine its disposition, even if we should adopt the conclusion of the learned justice at the special term that the evidence did establish the making of the contract relied upon by the plaintiffs. The claim was that the three sisters had made a contract by which the first one to die should devise and bequeath her property to the survivors, the second one to do the same to the last survivor, and the last to give all her property to her nieces. It is shown that Matilda, the first sister to die, made her will in April, 1881, and by it gave all her property to her two sisters. In July, 1881, the surviving sisters, Catherine and Mary, made their wills, by which each one gave to the other all her property, real and personal. The will of each sister gave a legacy to their brother, Francis Everdell, during his life; but it is not necessary, in my judgment, to lay any stress upon that legacy, because it was provided in each will that the remainder in that legacy should belong to the sisters. Neither Catherine nor Mary made any provision in her will for the nieces, and, so far as they were concerned, the alleged agreement was never carried out; nor was there any intention of carrying it out by either of them, so far as appears. The wills of Catherine and Mary were never changed; and when Catherine died Mary became the owner of all her property by virtue of her will made in 1881, just as Catherine would have taken an absolute title to Mary's property in the same way if Mary had died first. There is no proof in the case of anything, so far as we can see, which leads to a fair inference that either of the two sisters Catherine or Mary ever intended to make any change in the wills as they existed in July, 1881, after the death of Matilda. In 1890,—long after the death of Catherine,—Mary made a new will, by which she gave legacies of a very considerable amount to different persons, and to one of her sisters and certain of her nieces, and made others of her nieces residuary legatees. This will, which was proved before the surrogate, was not, in any sense, a compliance with the alleged agreement. The fact that these various wills were made is not disputed, nor is it alleged on the part of the plaintiffs that Mary Everdell ever made such a will as it is claimed was provided for by the agreement. There is no pretense that in any of her wills she ever left one penny to any of her nieces, except what was left by the last will, which is attacked. This fact is important as showing the difference between this case and all the other cases in the books where it has been attempted to enforce an agreement to make mutual wills. In the leading case of Walpole v. Orford, 3 Ves. 402, and in every case which has followed it, as far as I can discover, down to the case of Edson v. Parsons, 85 Hun, 263, 32 N. Y. Supp. 1036; 155 N. Y. 555, 50 N. E. 265,—the agreement to make the mutual wills had been carried out, and each party to the agreement had made such a will as it was claimed the agreement called for. The grievance in each case was that after the death of one party to the agreement the survivor had attempted to revoke the will which he had made in accordance with the contract, and the relief asked was that the attempted revocation should be held to be ineffectual, and that the first will made in pursuance of the agree-

ment should be established as the will of the testator. It is quite apparent that in all such cases the statute of frauds could not be successfully invoked, because, although the original contract had been by parol, yet it had been executed by a writing made with the express intention of carrying it into effect; and the complaint in each case was that there had been an attempt by a subsequent act to destroy the effect of the writing which had been made in execution of the original agreement. But that is not this case. Nor is this case within the rule of those cases where the plaintiff has performed services upon the faith of an agreement to devise property to him after the death of the one for whom the services were rendered. In such a case the well-settled rule of equity applies that the person who has fully performed his part of the contract has the right to enforce the specific performance of the contract on the part of the other party to it, although, if no part of it had been performed, it would have been void under the statute of frauds. But this case does not come within the principle established in either of those classes of cases. It is not an attempt to establish a will which has been made, but it is an attempt simply to procure the courts to make for a party a will which she never executed, disposing of her property in a way which she never intended. The persons who make this attempt never had any contractual relations with the testatrix, nor with any of the parties to the alleged contract; they never did any act by way of part performance; they never acquired a legal right to any of the property affected by the alleged contract; nor have they lost anything because of an attempt to perform the contract by either party to it, or by an attempt by anyone else to perform it. That this contract is within the statute of frauds will not, probably, be denied. Gould v. Mansfield, 103 Mass. 408; Gooding v. Brown, 35 Hun, 148; Ellis v. Cary, 74 Wis. 176, 42 N. W. 252, 4 L. R. A. 55. Being within the statute of frauds, it is void in equity as well as in law. Wheeler v. Reynolds, 66 N. Y. 227. But, although a contract may be void as within the statute of frauds, yet the courts of equity, in their discretion, will sometimes require the specific performance of such a contract, where the party seeking that performance has so far executed it on his part that it would operate as a fraud upon him if he were not able to secure the benefit of it. But it is conceded that this rule of equity trenches upon the statute, and operates practically as a repeal of it, and therefore the courts are loth to extend this doctrine of part performance to a case which has not already by well-settled rules been brought within the principles thus far established. Story, Eq. Jur. § 766; Pom. Spec. Perf. Cont. § 98.

One of the rules which the court has established in respect of this matter is that the acts which are claimed to have been done as part performance of the contract must unequivocally refer to and result from the agreement, and must clearly show that there was some contract between the parties to which they were exclusively referable, and it must appear that those acts would not have been done except for the contract. Pom. Spec. Perf. Cont. § 108, and cases cited in note 1; Story, Eq. Jur. § 762. Proof of that fact is entirely lacking in this case. The facts even do not establish by fair inference that

any of the wills were made with reference to the alleged contract. Indeed, when Catherine made her will, no such contract was in her mind, for in it, and in the will of her sister Mary, made at the same time, no provision was made by either for any of the nieces. It is also a rule that the party seeking specific performance must have done by way of part performance some act which is not only exclusively referable to the contract, but is of such a nature that, if the contract should not be performed, that person would be practically defrauded by reason of the act which he had done in part performance of the contract and in reliance upon it. Canda v. Totten, 157 N. Y. 281, 51 N. E. 989; Wheeler v. Reynolds, supra; Story, Eq. Jur. § 765; Pom. Spec. Perf. Cont. § 104. There is no pretense in this case that the plaintiffs ever did any act in part performance of this contract, or in fact that they ever knew anything about it. So far as they are concerned, this was simply an attempt on the part of other persons to make a gift to them which never was executed; and they are in the same position as any person who attempts in equity to enforce the specific performance of an agreement to make a gift, which will never be done. Young v. Young, 80 N. Y. 422.

But it is said that, Matilda and Catherine Everdell having partly performed this contract, the plaintiffs have, by virtue of that part performance, some standing in equity to obtain this relief. But the plaintiffs are not assignees of either Catherine or Matilda. They never received anything from them, and neither Catherine nor Matilda ever occupied towards them the position of trustees. Whatever right they can have exists, if at all, by reason of this void contract; and, if they should be permitted to enforce it, we would have the remarkable situation of a person claiming to be at liberty to enforce a void contract because by the contract he claims a right which, until it is enforced, he does not have. It may be that the executors of Matilda and Catherine Everdell, or those who are now their legal representatives, might enforce this contract; but how it can be enforced by other persons, who never paid anything, and never acquired any right, and have no legal interest in any of the estates under this contract, I cannot see. At the time this contract was made, in 1879, and when it was executed by Matilda, so far as it was executed, there were living other brothers and sisters, who are the parents of the plaintiffs and of the nieces who have been made defendants. None of the brothers or sisters at that time had died leaving children; so that, if these three sisters had died at that time, the only persons who would have taken their estates would have been the living brothers and sisters. So far as the nieces were concerned, neither of these three ladies had a legal obligation towards them, either to support them, or to pay them any money, or to give them any part of their estates. Whatever they might see fit to give them was simply a matter of favor, and was not done, and cannot be said to have been done, in performance of any legal obligation which either of these ladies ever owed to any niece. The nieces were not parties to this contract. Indeed, it does not appear that they had any knowledge of its existence for many years after it is alleged to have been made. So we have here an effort by persons who are not parties to a contract to

enforce it. Under certain circumstances that undoubtedly can be done. Lawrence v. Fox, 20 N. Y. 268. But, while this case has established a principle which is undoubtedly well settled in the jurisprudence of this state, yet that principle has never been so far extended as to permit a person to enforce such a contract unless some obligation existed towards him on the part of the one who procured the contract to be made for his benefit. No case can be found where a person has been permitted to bring an action under the principle established in Lawrence v. Fox to enforce a mere gift, unaccompanied by any obligation of the promisee to the person for whose benefit the thing was to be done. That a mere stranger cannot claim the benefit of a contract between other parties, and that, to entitle a third person to such a benefit, there must be either a new consideration or some prior right or claim against one of the contracting parties by which the plaintiff has a legal interest in the performance of the agreement, is settled in the case of Vrooman v. Turner, 69 N. Y. 280. The new consideration referred to in that case is a consideration passing from the beneficiary to the person sought to be made liable upon the contract. We cannot discover that the rule laid down in that case has ever been changed or interfered with in the slightest degree. In the case of Buchanan v. Tilden, 158 N. Y. 109, 52 N. E. 724, the same principle was conceded to exist, and the point upon which the court of appeals differed from the court below was that the obligation of a husband to his wife was sufficient, in view of the peculiar facts in that case, to establish the necessary obligation to entitle him to bring an action upon the contract sought to be enforced. The principle itself was not impugned, nor was there any attempt to overrule any of the cases in which it is established. The case of Durnherr v. Rau, 135 N. Y. 219, 32 N. E. 49, is also a case where the same principle was recognized and applied. Within the principle of this case, we are utterly unable to see how the nieces, the plaintiffs here, have any standing in court to enforce this contract. They were not parties to it; no consideration passed between them and the parties making it, whose sole purpose seems to have been to make a gift to them; so that if they are permitted to bring this action, they will occupy the position of one who is permitted to enforce an executory agreement which the parties making it did not attempt to carry out. We are quite clear that no such effort can be sustained. Borland v. Welch, 164 N. Y. 104, 56 N. E. 556.

It is very clear that, if this was a contract to pay money to these persons, within the cases cited above, the plaintiffs could not maintain this action; and we are not aware of any rule of equity which authorizes a person to maintain an action of that kind for equitable relief, where he would have no standing in a court of law to enforce what he said was a legal liability. The only case in the books, so far as I can discover, in which even a suggestion was made that such an action may be maintained, is the case of Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265, in which the court below found that the alleged agreement to make mutual wills had never been made, and dismissed the complaint of the beneficiary upon that ground. That finding was affirmed by the general term, and upon appeal to the court

of appeals it was held that the facts were disputed, and that, therefore, the decision of the court below must be sustained. But it was said that a residuary legatee in mutual wills made under a contract with the testators had a standing in equity to enforce the contract against the legatees and legal representatives of the testator who survived the other party to the contract and then made another will; but what was said in that respect was not necessary to a decision of the case, because, when it appeared that no contract had been made, that was the end of it. Then, too, in that case it appeared that the wills had actually been made, and the complaint was that the survivor, after making a will in pursuance of what was said to be a contract, had attempted, after the death of the other party to it, to revoke that will. If the contract had been established, it would have been an executed, and not an executory, contract; and it is quite possible that in such a case a beneficiary under the will might have a standing in court to enforce the contract. But that is not this case, where the plaintiffs never were beneficiaries, and where no will had been made under the contract, and where what is sought to be accomplished is to make a will which had never been made: The principle here applied is, as it seems to us, absolutely fatal to the contention of the plaintiffs.

It is insisted by the defendants that the decree of the surrogate upon the contest of the will of Mary Everdell before him is a conclusive adjudication that the plaintiffs cannot maintain this action. But the surrogate has no equity jurisdiction, and, even if this claim had been made in his court, the surrogate could not have adjudicated upon it. He could only say whether the will presented to him was the last will of Mary Everdell; and, if it was, he was bound to admit it to probate, leaving to this court, which alone has full equity jurisdiction, the right to make such a judgment as the plaintiffs should be entitled to. But, for the reasons stated above, we conclude that the plaintiffs had no standing in court to maintain this action, and the judgment must be reversed, and a new trial ordered, with costs to the appellants to abide the event.

VAN BRUNT, P. J. I concur, and, in addition, I think that no will was made by either of the sisters which was at all a compliance with the contract as sworn to.

INGRAHAM, J. I concur with Mr. Justice RUMSEY. The result of the judgment appealed from is that the court has made a will for the testatrix, by which all of her property is disposed of after her death for the benefit of certain persons, although a will making such a disposition of her property was never signed or executed as required by statute; and this result is effected because it is alleged that the deceased made an agreement many years ago to make a will dividing her property among certain specified persons, although none of the legatees and devisees who now seek to enforce this alleged oral agreement were parties to the agreement, or paid any of the consideration upon which it was based. Such a result would, it seems to me, violate the express provisions of the statute prescribing the formalities

necessary to the execution of a valid will of real or personal property, and open the door to the fraud which it was the special object
of the statute prescribing such formalities to prevent. By the statute in relation to the execution of wills (2 Rev. St. c. 6, tit. 1, § 40)
it is provided:

"Every last will of real or personal property, or both, shall be executed
and attested in the following manner: 1. It shall be subscribed by the testator at the end of the will. 2. Such subscription shall be made by the
testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses.
3. The testator, at the time of making such subscription, or at the time of
acknowledging the same, shall declare the instrument so subscribed to be his
last will and testament. 4. There shall be at least two attesting witnesses,
each of whom shall sign his name as a witness, at the end of the will, at the
request of the testator."

And in this state it has been uniformly held that these requirements
must be strictly complied with before a will can be admitted to probate, or be effectual to dispose of the property of a testator. It is
unnecessary to cite authorities to sustain this proposition, but the
last expression of the opinion of the court of appeals on the subject
is In re Andrews' Will, 162 N. Y. 1, 56 N. E. 529, 48 L. R. A. 662. It
is there said:

"It has long been the settled policy of this state to require certain formalities
to be observed in the execution of wills. These provisions are exceedingly
simple, and calculated to prevent frauds and uncertainty in the testamentary
dispositions of property."

It was there determined that the intention of the testator is not
to be considered when construing this statute, but that of the legislature; that the question is not what did the testator intend to do,
but what he did in the light of the statute; and in that case, although
it was plainly established that the testator intended to make a last
will and testament, and reduced his intention to writing, and signed
it in the presence of two witnesses, who signed the same at his request, it was held that, because the testator's name was not subscribed at the end of the will, it could not be admitted to probate as
the testator's will. The statute thus requiring the observance of
these formalities, and the court having by a uniform course of decisions established the principle that these formalities must be strictly followed, it would certainly seem a necessary conclusion that a
mere verbal agreement to make a will, no matter what the consideration, could no more be enforced than could an oral will. In this case
the testatrix never made a will in pursuance of this alleged oral
agreement. No such will was ever executed by her with or without
the formalities required by the statute, and no will therefore exists
which was valid under the statute, or which could be admitted to probate, to effect such a disposition of the testatrix's property. In the
absence of such a formally executed will, no court has the power to
make a will for the testatrix, and thus dispose of her property after
her death as though she had made a will as prescribed by the statute.
In all of the cases which have enforced these mutual agreements to
make a will of which I have any knowledge, a will executed with the
formalities required by law had been actually executed in pursuance

of the agreement, and it was that will that the judgment enforced as against a will subsequently made, and which, but for the agreement, would have revoked the prior will made in pursuance of the agreement. This consideration seems to me to bar the enforcement by the court of such an oral agreement as was alleged in this case, when no will was actually executed to enforce it. I concur, therefore, in the reversal of this judgment.

VAN BRUNT, P. J., concurs.

HATCH, J. (dissenting). I find myself unable to agree with the majority of the court in the disposition which is made of this case. The trial court has found that the three sisters, Matilda, Catherine, and Mary L. Everdell, entered into an agreement each with the other that each should make her last will and testament, and should therein give, devise, and bequeath to the survivors or survivor all of her property, so that the sister last surviving should receive the entire estate of the two sisters who predeceased her, and that the survivor should make and leave a last will and testament giving her entire estate, including the property derived from the two deceased sisters, to all the nieces of the sisters, share and share alike; that Matilda and Catherine both died prior to Mary, each leaving a last will and testament, which disposed of their property in accordance with the agreement. Matilda, the first to die, devised her property to Catherine and Mary, except that she gave to her brother, Francis Everdell, the use of certain property during his lifetime, and upon his death, or if he should sooner pay over the same, to the surviving sisters, the same to go to them absolutely. Catherine was next to die, and she gave and devised in like manner her property to her sister, Mary, making the same provision therein with respect to Francis Everdell as was contained in Matilda's will. Under these wills Mary took and received the entire property and estate left by the sisters as aforesaid. Mary, after having received the estates of her sisters, repudiated the agreement, and by her last will and testament disposed of the greater part of her estate in violation of the provisions of the agreement. The court further found that such agreement was a valid, binding agreement, and decreed performance in accordance with it, as demanded in the complaint. I am of opinion that the finding of the court is clearly supported by the testimony, and answers the requirements as to the degree of strictness of proof required by the rule laid down in Gall v. Gall, 64 Hun, 600, 19 N. Y. Supp. 332. The parol testimony given in the case is clear and distinct, and practically uncontradicted, to the effect that the sisters, a long time prior to their death, agreed among themselves to make mutual wills, so that the ultimate disposition of the property should become vested in their nieces, parties to this action. The wills support the oral testimony. That of Matilda bore date April 4, 1881; of Catherine, July 26, 1881; and of Mary, July 22, 1881. The wills of the two sisters first named are almost exactly similar in language, and entirely so in substance. Mary's will is, in substance, the same, except that she makes a devise to the defendant Elizabeth Hill of all her right, title,

and interest in her house and lot. It nowhere appears in the testimony that the sisters had any knowledge of the contents of the others' wills, and, aside from the agreement to make mutual wills, there is no evidence showing or tending to show that Matilda and Catherine had knowledge of the devise by Mary of property to Elizabeth L. Hill. While it is undoubtedly true that this agreement to make the mutual wills was invalid, and could not be enforced so long as it remained unexecuted, and while each had the right to make the will which she did, or to make a different will, prior to the death of either of the sisters, irrespective of the terms of the agreement, yet it is equally true that one sister could not, as against the others, accept the benefits which she derived from the agreement, and defeat its whole scope and purpose, after having so received its benefits. The purpose of the agreement was to give to the surviving sisters or sister the absolute right of use of the whole estate for any purpose which she chose, and undoubtedly the surviving sister could have used the whole of all the estates for any purpose which she desired. But she became bound, both by the benefits which she received and the terms of the agreement, to bequeath and devise the residuum to the nieces. As applied to the facts of this case, however, the agreement having been performed, and the surviving sister having received its benefits, the right of the nieces to the property became absolute. It was not essential or necessary that any will should have been made by Mary to vest title in them or secure their rights. They took, not by virtue of the will, but by virtue of the agreement which had been made and executed by the two sisters who had died. If Mary had left no will, their rights would not have been defeated, and the making of a will contrary to the agreement did not operate to devest them of such right. The statute of wills, under such circumstances, manifestly can have no application, for it is not the will of Mary which is to be effectual to vest in the nieces the title of the property. They take by virtue of the executed agreement. The method by which that agreement was to be carried into effect was the execution of a will, but the failure to comply with the terms of the agreement in this respect does not, on this record, have the effect of defeating their rights.

So far as the bequest in the wills to Francis Everdell is concerned, there was no departure from the agreement. In this respect the three wills were alike. The bequest itself was in the nature of a necessity, and a desire to aid the brother, and was evidently shared in by all of the sisters, as the wills upon this subject are the same. Francis L. Everdell was indebted to the sisters for moneys and certain stocks loaned to him belonging to them. The stocks he had hypothecated, and raised money for use in his business, and the sisters evidently intended that these debts should be discharged, and the stocks returned, during the lifetime of Francis, and, if not, at his death. The necessity for the bequest in this form was due to the circumstance of Francis' indebtedness, and, whatever be its legal character, it did not have the effect of showing any departure from the agreement. In any event, Mary L. Everdell could not be heard to say, nor can her representatives, that this bequest is a departure

from the agreement. The wills contained it. Mary received the property, and after the death of her two sisters she proceeded to recover the stock and collect the debts which were due and owing from the brother, and has, therefore, placed a practical construction upon the wills and her right thereunder. She had reduced to her own possession, prior to her death, all of the property which came to her through the wills of her sisters, including this.

Aside from this feature, the terms of the wills correspond with the proof, and both together answer the requirements of the law, and clearly support the finding of the learned court. Indeed, as I view this case, unless the agreement for mutual wills be supported, it may as well be said that the law does not authorize or validate such agreements, for here the existence of the agreement is clear, cogent, and convincing, and the proof shows its execution by two of the sisters. Upon the facts, therefore, I think the action can be maintained, and the judgment is proper, if it can be supported within legal rules. As to the latter question I entertain no doubt whatever, for, as I view the law, laid down by the court of appeals in Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265, such question is authoritatively determined. Therein an action was brought to enforce a mutual agreement against the testator of the survivor of two sisters to make a will devising their property to a brother as the ultimate residuary legatee. The action failed, but only for the reason that the proof was insufficient to establish the fact of the making of the agreement. It was sought to be sustained by a consideration of the uniform habit of thought and action of the two sisters, and the terms of the wills which they made. Aside from this, there was no proof showing any agreement, and the court held it insufficient for such purpose. In discussing the question, however, the court says:

"I think that there is no force in the objection of the respondent that, if the agreement was proved, the plaintiff's testator was incapable of enforcing it by reason of his not being a party to it. If it existed, it was for his benefit and advantage, and he had standing in equity to enforce it against the legatees and legal representatives of the testatrix."

Two things were decided in that case: First, that such an action could be maintained, and, if supported by sufficient proof, the agreement enforced; and, second, that the ultimate beneficiary under the agreement had standing to maintain the action, although not a party to the agreement. It seems clear, therefore, that under the facts and the law, as presented by this case, the plaintiffs are entitled to the benefits of the judgment which has been rendered. The statute of frauds constitutes no bar to the action. It would have been a complete answer to it had the agreement remained executory, but, it having been executed, and Mary L. Everdell having received the benefits under it, she was bound to vest the property which she devised in accordance with its terms; and, having failed, equity will make the disposition which she ought to have made. Healy v. Healy, 55 App. Div. 315, 66 N. Y. Supp. 927. All of the cases relied upon by the appellants in support of the statute as a bar are distinguished by the fact that in each the alleged agreement remained executory, and no performance was had under it. In the present case there was clear

consideration by the devise of the property to Mary, and her enjoyment of it. The doctrine of Lawrence v. Fox and kindred cases has no application. That was an action at law to enforce a promise made by one party to another for the benefit of a third person. This is an action in equity for the specific performance of a contract, and, in effect, to impress a trust in favor of the parties hereto upon the property which came to Mary L. Everdell, and was devised by her. The principles applicable in such a case and that of Lawrence v. Fox are entirely dissimilar. I think, therefore, that the judgment should be affirmed.

O'BRIEN, J., concurs.