SCRUGGS v. COTTERILL et al.

(Supreme Court, Appellate Division, First Department. January 10, 1902.)

1. CONTRACT—SUBSEQUENT AGREEMENT—SAME SUBJECT-MATTER—EFFECT.
     Where the parties to a contract thereafter enter into a memorandum agreement covering the same subject-matter and including additional terms and parties, the original contract is thereby superseded.

2. SAME—STOCK IN CORPORATION—OPTION TO PURCHASE—SURVIVOR—VALIDITY.
     An agreement between the owners of the majority of the capital stock of a corporation that, in the event of the death of either party or of his wishing to sell his stock, the others should have the privilege of purchasing at a specified price per share, is not invalid, as a wager on the life of a party or as interfering with the devolution of property by will on the death of its owner, but is binding on the executors of a deceased party.

3. SAME—RIGHT TO ALIENATE STOCK.
     A contract between the owners of the majority of the capital stock of a corporation that, on the death of either or his wishing to sell his stock, the others may purchase at a stated price, is not invalid as a restraint on the right to alienate the stock.

4. SAME—SCHEME TO CONTROL CORPORATE STOCK.
     Though constituting a scheme to control the corporate stock, the contract was not invalid, as the owners of all the stock in a corporation may legally contract to control the stock for the purposes of management lawful in itself.

5. SAME—EQUITY—SPECIFIC PERFORMANCE.
     A contract between the owners of the majority of the stock of a corporation that, on the death of either or his wishing to sell, the others may purchase at a stated price, is within the jurisdiction of equity to enforce by a decree of specific performance.

Controversy by Richard M. Scruggs against George W. Cotterill and others, submitted on agreed statement of facts. Judgment for plaintiff.

Argued before VAN BRUNT, P. J., and PATTERSON, IN-GRAHAM, HATCH, and LAUGHLIN, JJ.

G. H. Crawford, for plaintiff.
G. W. Cotterill, for defendants.

HATCH, J. From the facts stated in the submission, it appears that the plaintiff and William L. Vandervoort, deceased, were associated together in the dry goods business, at St. Louis, Mo., and had been for 40 years and upward, first as partners, and afterwards as a corporation under the name of the Scruggs, Vandervoort & Barney Dry Goods Company, to which corporation the property and business of the partnership was transferred. The stock of the corporation was divided into 5,000 shares, of $100 each, of which stock Scruggs held 3,000 shares, and Vandervoort and Barney each 1,000. Barney died on or about July 12, 1898, the holder of his shares. On February 17, 1899, Scruggs and Vandervoort entered into an agreement which recited that both parties were desirous of purchasing the stock of the other in the corporation, in the event that either was willing to sell the same or in the event of the death of either party. For the purpose of carrying such desire into effect, each gave to the other the privilege of purchasing such stock upon

the happening of either contingency recited in the agreement. The contract provides that, in consideration of such desire and of the mutual promises and undertakings to be kept and performed by the parties thereto, the said parties have agreed together, and do agree, each with the other, and do expressly bind their heirs, executors, and legal representatives to the full and faithful performance of the same. Then follows an agreement on the part of Scruggs giving to Vandervoort the option and privilege of purchasing his (Scruggs') 2,000 shares of stock for the price of $125 per share, if Scruggs should at any time conclude to dispose of such stock or to offer the same for sale; and, in the event of the death of Scruggs during the life of Vandervoort, then such stock so owned by Scruggs should be sold to said second party at the price of $125 per share, and Vandervoort was given the exclusive right and privilege of purchasing. There was excepted from the operation of this agreement upon the part of Scruggs so many shares of stock as he might thereafter sell to Crawford and Johnson. The agreement further provided that, in the event Scruggs elected to sell, he should give the other party written notice of such intention, and the party so notified was given six months from the date of the receipt of the notice within which to take advantage of the terms of the contract; and, in the event he failed to avail himself of such terms, Scruggs was free to make such disposition of the stock as he chose. In the event of the death of Scruggs during the lifetime of Vandervoort, the latter was to have three months from the date of death within which time to avail himself of the terms of the contract, and, failing so to avail himself, the representatives of the deceased party became free to act independently of the contract, and the same became void and of no effect. By precise stipulation, Vandervoort engaged himself to sell his stock to Scruggs upon the same terms and conditions; the stipulation being in each case equal and mutual, and binding alike upon each party. In express terms the contract was made personal and unassignable, and binding upon the heirs, executors, or legal representatives of either party.

The contingency for which provision was made in Scruggs' contract happened, as he thereafter, and in 1899, sold to Crawford and Johnson 1,000 shares of his stock, and said parties also acquired by purchase the 1,000 shares of stock held by the estate of Barney. After the purchase by Crawford and Johnson, all of the shares of the stock were held by the four named persons, and no others were interested in the business carried on by the corporation. Thereafter, and on March 31, 1899, all of the parties in interest made and entered into a memorandum agreement whereby Scruggs gave to Vandervoort a first option to purchase his shares of stock, whenever he decided to sell, at $125 per share; Vandervoort to have 30 days after notice from Scruggs in which to accept or decline the option. His acceptance was required to be in writing, accompanied by a payment of 4 per cent. upon the stock as a first payment to bind the bargain; and he was thereafter to have 5 months from the expiration of the 30 days in which to pay the remainder and complete his purchase. And, in the event of Scruggs' death, Van-

dervoort was given precisely the same right as though Scruggs desired to sell in his lifetime, except that the 30 days should not begin to run until the date of issuing letters testamentary or of administration upon the estate of Scruggs. Scruggs also gave an option to Johnson and Crawford to purchase his stock in the event that Vandervoort failed to take advantage of the option and privilege given him, and the contract provides within what time such right might be exercised. Vandervoort upon his part gave to Scruggs a precisely similar option to purchase his stock upon the same terms and conditions, and to Crawford and Johnson he gave the same option that Scruggs had given to them. Crawford and Johnson, upon their part, gave to Scruggs and Vandervoort, or the survivor of them, or to the one who was desirous of availing himself of such option, the right to purchase their stock upon the same terms and conditions as applied to Scruggs and Vandervoort. The options given by this agreement were made personal and nonassignable, and did not pass to the executors or administrators of deceased parties. It was contemplated by the parties to this memorandum agreement that the same should thereafter be more formally expressed, signed, and mutually exchanged as soon as practicable. This was never done, and the rights and liabilities of the parties to this controversy must be determined by its terms and conditions.

We agree with the contention of the defendant that the memorandum agreement superseded the contract between Scruggs and Vandervoort. It covered the same subject-matter, and it was made necessary by the fact that Crawford and Johnson had become by purchase holders of shares of stock in the corporation; and, as it was the evident intent of all to provide for the control of the business carried on by the corporation by the parties holding all of its stock, a new agreement was necessary in order to be binding upon all. In addition to this, it is disclosed by the record that the shares of stock held by the respective parties should have written upon the face thereof, "Subject to option agreement, dated March 31, 1899." While the terms of this memorandum agreement are not so precise and formal as was the agreement between Scruggs and Vandervoort, yet the mutual agreements are expressed clearly and distinctly, and the engagements of the respective parties are quite as clear and complete as though more formal words were used in defining them. By the terms of this agreement it is clear that Vandervoort bound himself to sell his stock at $125 a share in the event of his death and if Scruggs availed himself of the terms of the option.

On the 31st day of December, 1900, Mr. Vandervoort died in the city of New York, the place of his residence, leaving a last will and testament and appointing the defendants his executors; and on the 26th day of March, 1901, letters testamentary were issued to such defendants as executors of his estate. Upon the same day, after the issuance of these letters, the plaintiff gave notice that he elected to accept the option provided for in the agreement, and at the same time tendered to the executor Cotterill the sum of $125,000, and demanded a transfer of the certificate of stock held by the estate of

Vandervoort in the corporation. The executors refused to comply with such demand or transfer the stock to the plaintiff. The plaintiff thereupon deposited the $125,000 in the Atlantic Trust Company in the city of New York, subject to the order of the court in this controversy, or to be drawn upon the consent of the attorneys for the plaintiff and the defendant executor Cotterill, with the same effect as if the money were paid to the clerk of this court.

It is evident that the parties to the contract had the capacity to make a contract such as this. There was no infirmity in the capacity of the parties. There was nothing unlawful in its character, as the owners of all the stock had the right to contract with respect to the control of the corporation. Brown v. Britton, 41 App. Div. 57, 58 N. Y. Supp. 353. And as it contained stipulations binding upon the parties, all of the elements of a good contract were present, and the parties stood to each other in a contractual relation. The mutual stipulations of each party to the other are expressed in precise terms, and are sufficient to establish a good consideration. Such promises have been usually held sufficient upon which to found legal liability. Hamer v. Sidway, 124 N. Y. 546, 27 N. E. 256, 12 L. R. A. 463, 21 Am. St. Rep. 693.

There can be no doubt, if Vandervoort had expressed a desire to sell his stock in his lifetime, that under the contract Scruggs would have become possessed of a right to purchase upon the terms contained in the instrument. The stipulations were equally binding in the event of death. It is said, however, that such stipulation cannot be enforced, as it is in the nature of a wager upon the life of a party, and interferes with the devolution of property under a will. In principle the case is not different from an agreement to make mutual wills, which the courts have sustained as a good contract and founded upon a good consideration. Gall v. Gall, 29 Abb. N. C. 19 and note 28, 19 N. Y. Supp. 332; Edson v. Parsons, 155 N. Y. 555–566, 50 N. E. 265; Everdell v. Hill, 58 App. Div. 151, 68 N. Y. Supp. 719. Other promises of a similar nature are recognized as valid. Healy v. Healy, 55 App. Div. 315, 66 N. Y. Supp. 927. These parties during their lifetime evidently regarded this business as prosperous, and that it could be made so to continue if the persons then engaged in its management could continue in its control and carry out its policy; and to this end they made a contract which, among themselves, at least, they deemed advantageous for the business, and, having the contingency of death ever present, stipulated in respect to it. We know of no principle of law which prohibits such a stipulation or upon which it may be held invalid. In every case of the devolution of property by will, it is subject to the just obligations of the testator, which are required to be fulfilled and discharged before the property passes to the legatee.

It is contended that the contract is void as prohibiting the right to alienate this stock. Such is not the fact. The right to sell it was not fettered for an instant. Indeed, by the terms of the contract, provision is made for the exercise of such right. The only limitation, if there was a determination to sell, was the privilege by the other party to buy upon certain conditions, and such conditions have never

been held invalid. This case does not fall within the principle announced in Fisher v. Bush, 35 Hun, 641, and similar cases. Therein there was an express agreement not to sell for any purpose, and it was held void as against public policy. Here there was no limitation of the right to sell. It was only subject for a limited period to the right of the other party to buy. And an agreement which seeks to control the stock of a corporation for purposes of management, lawful in itself, is not subject to any infirmity, but is the exercise of a legal right.

It is further contended that a court of equity has no jurisdiction to decree specific performance of such a contract. Such claim is opposed to authority. Bomeisler v. Forster, 154 N. Y. 239, 48 N. E. 534, 39 L. R. A. 240; Cushman v. Manufacturing Co., 76 N. Y. 365, 32 Am. Rep. 315. As there were present all of the elements of a good contract, with the terms of which the plaintiff has complied, liability became established against the estate, and as such can be enforced. Mactier's Adm'rs v. Frith, 6 Wend. 103, 21 Am. Dec. 262.

It follows that judgment should be awarded in favor of the plaintiff, with costs. All concur.