Richard M. Scruggs, Plaintiff, *v.* George W. Cotterill and William Holmes Thomson, as Executors, etc., of William L. Vandervoort, Deceased, and Others, Defendants.

*Agreement between the stockholders of a corporation, giving to each the first right to purchase the stock held by the other in case such other desired to sell or of his death — it will be specifically enforced against their executors — it is not a wager contract.*

A contract made between four persons, who were the sole parties interested in a corporation, by which each of the parties gave to another party a first option to purchase his shares of stock at a certain price whenever he desired to sell, the party to whom the option was given to have thirty days after notice in which to accept or decline the option, and by which each party gave to another a similar option in the event of his death, except that the thirty days should not begin to run until the date of the issuing of letters testamentary or of administration, and which conferred upon the other parties the privilege of exercising such option in case the party to whom the first option was given failed to accept it, is valid, and the court will, in the event of the refusal of the executors of a deceased party to transfer the stock of their testator in pursuance of the contract, direct its specific performance.

The mutual stipulations of each party constitute a sufficient consideration for the contract.

Such a contract is not void as being a wager upon the life of a party and interfering with the devolution of the property by will, or as prohibiting the alienation of the stock.

Submission of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*G. H. Crawford,* for the plaintiff.

*G. W. Cotterill,* for the defendant executor, Cotterill.

Hatch, J.:

From the facts stated in the submission it appears that the plaintiff and William L. Vandervoort, deceased, were associated together

in the dry goods business, at St. Louis, Mo., and had been for forty years and upwards, first as partners, and afterwards as a corporation under the name of Scruggs, Vandervoort & Barney Dry Goods Company, to which corporation the property and business of the partnership was transferred. The stock of the corporation was divided into 5,000 shares, of $100 each; of which stock Scruggs held 3,000 shares, and Vandervoort and Barney each 1,000. Barney died on or about July 12, 1898, the holder of his shares.

On February 17, 1899, Scruggs and Vandervoort entered into an agreement which recited that both parties were desirous of purchasing the stock of the other in the corporation in the event that either was willing to sell the same, or in the event of the death of either party. For the purpose of carrying such desire into effect, each gave to the other the privilege of purchasing such stock upon the happening of either contingency recited in the agreement. The contract provides that, in consideration of such desire and of the mutual promises and undertakings to be kept and performed by the parties thereto, the said parties have agreed together, and do agree, each with the other, and do expressly bind their heirs, executors and legal representatives to the full and faithful performance of the same. Then follows an agreement on the part of Scruggs giving to Vandervoort the option and privilege of purchasing his (Scruggs') 2,000 shares of stock for the price of $125 per share, if Scruggs should at any time conclude to dispose of such stock or to offer the same for sale. And in the event of the death of Scruggs during the life of Vandervoort, then such stock so owned by Scruggs should be sold to said second party at the price of $125 per share; and Vandervoort was given the exclusive right and privilege of purchasing. There was excepted from the operation of this agreement on the part of Scruggs, so many shares of stock as he might thereafter sell to Crawford and Johnson. The agreement further provided that, in the event Scruggs elected to sell, he should give the other party written notice of such intention, and the party so notified was given six months from the date of the receipt of the notice within which to take advantage of the terms of the contract, and in the event he failed to avail himself of such terms, Scruggs was free to make such disposition of the stock as he chose. In the event of the death of Scruggs during the lifetime of Vandervoort, the latter was to have three

months from the date of death within which time to avail himself
of the terms of the contract, and failing so to avail himself, the
representatives of the deceased party became free to act independ-
ently of the contract, and the same became void and of no effect.
By precise stipulation Vandervoort engaged himself to sell his stock
to Scruggs upon the same terms and conditions, the stipulation being
in each case equal and mutual, and binding alike upon each party.
In express terms the contract was made personal and unassignable
and binding upon the heirs, executors or legal representatives of
either party.

The contingency for which provision was made in Scruggs' con-
tract happened, as he thereafter, and in 1899, sold to Crawford and
Johnson 1,000 shares of his stock, and said parties also acquired by
purchase the 1,000 shares of stock held by the estate of Barney.
After the purchase by Crawford and Johnson, all of the shares of
the stock were held by the four named persons, and no others were
interested in the business carried on by the corporation.

Thereafter, and on March 31, 1899, all of the parties in interest
made and entered into a memorandum agreement whereby Scruggs
gave to Vandervoort a first option to purchase his shares of stock
whenever he decided to sell at $125 per share ; Vandervoort to have
thirty days after notice from Scruggs in which to accept or decline
the option.  His acceptance was required to be in writing, accom-
panied by a payment of four per cent upon the stock as a first pay-
ment to bind the bargain, and he was thereafter to have five months
from the expiration of the thirty days in which to pay the remainder
and complete his purchase.  And in the event of Scruggs's death,
Vandervoort was given precisely the same right as though Scruggs
desired to sell in his lifetime, except that the thirty days should not
begin to run until the date of issuing letters testamentary or of
administration upon the estate of Scruggs.  Scruggs also gave an
option to Johnson and Crawford to purchase his stock in the event
that Vandervoort failed to take advantage of the option and priv-
ilege given him, and the contract provides within what time such
right might be exercised.  Vandervoort upon his part gave to
Scruggs a precisely similar option to purchase his stock upon the
same terms and conditions; and to Crawford and Johnson he gave
the same option that Scruggs had given to them.  Crawford and

Johnson, upon their part, gave to Scruggs and Vandervoort, or the survivor of them, or to the one who was desirous of availing himself of such option, the right to purchase their stock upon the same terms and conditions as applied to Scruggs and Vandervoort. The options given by this agreement were made personal and non-assignable, and did not pass to the executors or administrators of deceased parties. It was contemplated by the parties to this memorandum agreement that the same should thereafter be more formally expressed, signed and mutually exchanged as soon as practicable. This was never done, and the rights and liabilities of the parties to this controversy must be determined by its terms and conditions.

We agree with the contention of the defendant that the memorandum agreement superseded the contract between Scruggs and Vandervoort. It covered the same subject-matter, and it was made necessary by the fact that Crawford and Johnson had become by purchase holders of shares of stock in the corporation; and as it was the evident intent of all to provide for the control of the business carried on by the corporation by the parties holding all of its stock, a new agreement was necessary in order to be binding upon all. In addition to this, it is disclosed by the record that the shares of stock held by the respective parties should have written upon the face thereof, " Subject to option agreement, dated March 31st, 1899." While the terms of this memorandum agreement are not so precise and formal as was the agreement between Scruggs and Vandervoort, yet the mutual agreements are expressed clearly and distinctly, and the engagements of the respective parties are quite as clear and complete as though more formal words were used in defining them. By the terms of this agreement, it is clear that Vandervoort bound himself to sell his stock at $125 a share in the event of his death, and if Scruggs availed himself of the terms of the option.

On the 31st day of December, 1900, Mr. Vandervoort died in the city of New York, the place of his residence, leaving a last will and testament and appointing the defendants his executors; and on the 26th day of March, 1901, letters testamentary were issued to such defendants as executors of his estate. Upon the same day after the issuance of these letters, the plaintiff gave notice that he elected to accept the option provided for in the agreement, and

at the same time tendered to the executor Cotterill the sum of $125,000, and demanded a transfer of the certificate of stock held by the estate of Vandervoort in the corporation. The executors refused to comply with such demand or transfer the stock to the plaintiff. The plaintiff thereupon deposited the $125,000 in the Atlantic Trust Company in the city of New York, subject to the order of the court in this controversy, or to be drawn upon the consent of the attorneys for the plaintiff and the defendant executor Cotterill, with the same effect as if the money were paid to the clerk of this court.

It is evident that the parties to the contract had the capacity to make a contract such as this. There was no infirmity in the capacity of the parties, there was nothing unlawful in its character, as the owners of all the stock had the right to contract with respect to the control of the corporation (*Brown* v. *Britton*, 41 App. Div. 57), and as it contained stipulations binding upon the parties, all of the elements of a good contract were present and the parties stood to each other in a contractual relation. The mutual stipulations of each party to the other are expressed in precise terms and are sufficient to establish a good consideration. Such promises have been usually held sufficient upon which to found legal liability. (*Hamer* v. *Sidway*, 124 N. Y. 546.)

There can be no doubt, if Vandervoort had expressed a desire to sell his stock in his lifetime, that under the contract Scruggs would have become possessed of a right to purchase upon the terms contained in the instrument. The stipulations were equally binding in the event of death. It is said, however, that such stipulation cannot be enforced, as it is in the nature of a wager upon the life of a party, and interferes with the devolution of property under a will. In principle the case is not different from an agreement to make mutual wills which the courts have sustained as a good contract and founded upon a good consideration. (*Gall* v. *Gall*, 29 Abb. N. C. 19, and note, 28; *Edson* v. *Parsons*, 155 N. Y. 555, 556; *Everdell* v. *Hill*, 58 App. Div. 151.) Other promises of a similar nature are recognized as valid. (*Healy* v. *Healy*, 55 App. Div. 315.) These parties during their lifetime evidently regarded this business as prosperous, and that it could be made so to continue if the persons then engaged in its management could continue in its

control and carry out its policy; and to this end they made a contract which among themselves, at least, they deemed advantageous for the business; and having the contingency of death ever present, stipulated in respect to it. We know of no principle of law which prohibits such a stipulation or upon which it may be held invalid. In every case of the devolution of property by will it is subject to the just obligations of the testator, which are required to be fulfilled and discharged before the property passes to the legatee.

It is contended that the contract is void as prohibiting the right to alienate this stock. Such is not the fact. The right to sell it was not fettered for an instant. Indeed, by the terms of the contract provision is made for the exercise of such right. The only limitation, if there was a determination to sell, was the privilege by the other party to buy upon certain conditions, and such conditions have never been held invalid. This case does not fall within the principle announced in *Fisher* v. *Bush* (35 Hun, 641) and similar cases. Therein there was an express agreement not to sell for any purpose, and it was held void as against public policy. Here there was no limitation of the right to sell, it was only subject for a limited period to the right of the other party to buy. And an agreement which seeks to control the stock of a corporation for purposes of management, lawful in itself, is not subject to any infirmity, but is the exercise of a legal right.

It is further contended that a court of equity has no jurisdiction to decree specific performance of such a contract. Such claim is opposed to authority. (*Bomeisler* v. *Forster,* 154 N. Y. 239; *Cushman* v. *Thayer Mfg. Jewelry Co.,* 76 id. 365.) As there was present all of the elements of a good contract, with the terms of which the plaintiff has complied, liability became established against the estate, and as such can be enforced. (*Mactier's Admrs.* v. *Frith,* 6 Wend. 103.)

It follows that judgment should be awarded in favor of the plaintiff, with costs.

VAN BRUNT, P. J., PATTERSON, INGRAHAM and LAUGHLIN, JJ., concurred.

Judgment ordered in favor of plaintiff, with costs.