FRED WILLIAMS, Appellant, *v.* THOMAS J. MONTGOMERY et al., Defendants ; JOHN B. POWELL, Respondent.

148  519
162  343

1. APPEAL — ABSTRACT QUESTIONS. Relief from a judgment for costs merely is not adequate ground upon which to reverse a judgment and grant a new trial if the questions arising on the merits of the action have become abstract by lapse of time.

2. ACTION FOR SPECIFIC PERFORMANCE — LAPSE OF TERM OF CONTRACT — PRELIMINARY INJUNCTION — LIABILITY ON UNDERTAKING ESTABLISHED BY DISMISSAL OF COMPLAINT — APPEAL. When the term of a contract, the subject of a suit for specific performance, in which the plaintiff has obtained a preliminary injunction on giving an undertaking for damages, has expired before trial, without fault of the plaintiff, and on the trial the complaint is dismissed with costs upon that ground and also upon the ground that it does not state a cause of action, the liability thereby imposed upon the plaintiff under the injunction undertaking renders an appeal from an affirmance of the dismissal of the complaint of such practical importance as to justify the Court of Appeals in entertaining it; but if, on review by that court, it is found that the dismissal of the complaint upon the ground that it did not state a cause of action was erroneous, and that the plaintiff was entitled to a preliminary injunction, subject to the sound discretion of the court below, a new trial will not be granted, but the judgment will be modified by adjudging that the plaintiff was entitled to a preliminary injunction, striking out all allowances for costs below and basing the dismissal of the complaint solely upon the ground that, by reason of the lapse of time, a decree. if granted, could not be carried into effect.

3. SUSPENSION OF POWER OF ALIENATION. The test of alienability of real or personal property is that there are persons in being who can give a perfect title (1 R. S. 723, § 14; 773, § 2); and where, through there being living parties who have unitedly the entire right of ownership, there is a present right to dispose of the whole interest, even if its exercise depends upon the consent of many persons, there is no unlawful suspension of the power of alienation.

4. PUBLIC POLICY — RESTRAINT OF TRADE. A reasonable regulation as to the mode of selling corporate stock, so as to prevent its sacrifice, is not against public policy as being a restraint upon trade.

5. AGREEMENT AS TO CORPORATE STOCK — SUSPENSION OF POWER OF ALIENATION — RESTRAINT OF TRADE. An agreement in writing between the promoters of a corporate enterprise owning ninety-nine one-hundredths of its capital stock as tenants in common, to partition their holdings after first placing in the treasury one-fifth of all the stock, to be sold to provide working capital, and, in order to prevent a sacrifice thereof, providing for the deposit of their individual stock certificates with a trust company, each agreeing that he would not withdraw the same for six months except by mutual consent, unless enough treasury stock should be sooner sold to realize a sum named, in which event any one could withdraw his certificate on five days' notice to the others, does not constitute an unlawful suspension of the power of alienation, and is not against public policy as being in restraint of trade.

6. CONTRACT AS TO PERSONAL PROPERTY — SPECIFIC PERFORMANCE. Although specific performance of a contract relating to personal property may not be demanded as a right, it rests in the sound discretion of the court, where compensation in damages would be difficult, if not impossible, through the matter being in the nature of an experiment, contracted for but not made, so that the result, of necessity, cannot be known

*Williams* v. *Montgomery* (68 Hun, 416), modified.

(Argued January 30, 1896; decided February 18, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 13, 1893, which affirmed a judgment entered upon a decision of the court at Special Term dismissing the complaint, with separate bills of costs to each of the defendants Lande and Powell.

It is alleged in the complaint that prior to November 2nd, 1892, the plaintiff was jointly interested with the defendants, Montgomery, Lande and Powell, in certain letters patent for a railway brake that had been transferred by one Guernsey, the patentee, to a corporation known as the Hydraulic Brake

Company; that on the day last named the parties so interested entered into an agreement, under seal, which apportioned their respective interests in the capital stock of said corporation, directed that a certain amount of stock be placed in the treas-- ury for working capital, and then provided as follows: " We also agree that the above certificates to Montgomery, Lande, Powell and Williams shall be deposited in the Central Trust Company, with a copy of this agreement, and shall not be withdrawn for the period of six months from this date, without the written consent of each and every party hereto; but with this proviso, that if sufficient treasury stock shall be sold to realize the sum of $30,000 in cash, then and in that event the stock which has been deposited in the Central Trust Company may be withdrawn by either of the parties, provided such party shall first notify the other parties hereto, in writing, at least five days before such withdrawal."

It was further alleged that the object of such agreement was to place all of the parties thereto upon " an equal footing as regards the control of the said brake company for a period of six months, or thereabouts, after the stock of the company had been issued, and also to prevent any sales " by any party to the agreement, " of their respective holdings of " such stock, " unless in the meantime enough treasury stock should have been sold to realize the sum of $30,000 in cash for the use of said company;" that said agreement had been violated by the defendants, in that Montgomery, the president, and Powell, the vice-president and general manager of the brake company, in January, 1893, secretly issued, or caused to be issued, stock to themselves and to Lande, but not to the plaintiff, and the said Montgomery purchased, or agreed to purchase, from Lande and Powell enough of the stock to give him, with his own, control of the company, for the purpose of defeating the agreement of November 2nd, 1892, and with the effect, unless prevented, of making it impossible to sell any part of the company stock to meet its obligations and pay its current expenses; that the certificates issued to the said defendants were not delivered to the Central Trust Company, but to the

defendant, the State Trust Company, together with certain agreements for the purchase of shares and promissory notes given therefor; that upon discovery of the facts, about January 24th, 1893, the plaintiff demanded performance of said agreement by the defendants, but they each refused, and he insisted, as his complaint further shows, that unless the defendants were restrained from disposing of their stock he would suffer irreparable loss. There was a demand for specific performance, an injunction, and for general relief. The action was commenced about January 26th, 1893, and was tried the 15th of May following.

A preliminary injunction was issued, an undertaking in the penalty of $5,000 having been furnished for the purpose by the plaintiff, but it was vacated by order of the Special Term, and upon appeal to the General Term said order was affirmed. Upon the trial, before any evidence had been introduced, the complaint was dismissed on motion of the defendants on the ground, among others, that it did not state a cause of action.

*George M. Pinney, Jr.,* for appellant. The court below erred in holding that the agreement of November 2, 1892, was in violation of the statute relating to accumulations of personal property and expectant estates therein. (*Bliven* v. *Seymour,* 88 N. Y. 478.) The complaint on its face states a good cause of action against the defendants, and was not demurrable at the time the action was begun. (*Stafford* v. *Merrill,* 62 Hun, 144; *Marie* v. *Garrison,* 83 N. Y. 14; *Sanders* v. *Soutter,* 126 N. Y. 196.) The plaintiff had no adequate or sufficient remedy at law for the breach of the agreement. (*Johnson* v. *Brooks,* 93 N. Y. 344; *Express Co.* v. *Railway Co.,* 99 U. S. 200; *Deiz* v. *Lamb,* 6 Rob. 537; *Christy* v. *Murphy,* 12 How. Pr. 77.)

*William W. Cook* for respondent. Where by reason of the lapse of time after the commencement of a suit, a decree of the court, even if granted, cannot be carried into effect, the court will dismiss an appeal. (*People ex rel.* v. *Common Coun-*

*cil of Troy,* 82 N. Y. 575; *Grow* v. *Garlock,* 29 Hun, 598.) The object of the contract was to prevent sales of the stock for six months. Such a contract is illegal, contrary to public policy and the statutes of the state, and is void and unenforceable. (*Williams* v. *Montgomery,* 68 Hun, 416; *Fisher* v. *Bush,* 35 Hun, 641; Greenwood on Pub. Policy, 502; *Moore* v. *Bank of Commerce,* 52 Mo. 377; 1 R. S. 773, § 1.) Even if the contract were legal, so long as the parties cared to abide by it, yet any one of them might withdraw his stock at any time. Such contracts have been repeatedly passed upon by the courts, and have been held to be revocable at the pleasure of the parties. (*In re Argus Co.,* 138 N. Y. 557; *Griffith* v. *Jewett,* 15 Wkly L. B. 419; *Hafer* v. *N. Y., etc., R. R.,* 14 Wkly L. B. 68; *Woodruff* v. *D., etc., R. R. Co.,* 30 Fed. Rep. 91; *Vanderbilt* v. *Bennett,* 2 R. & C. L. J. 409; *Moses* v. *Scott,* 4 South. Rep. 742; *Starbuck* v. *M. T. Co.,* 60 Conn. 553; *Express Co.* v. *Railway Co.,* 99 U. S. 191; Waterman on Spec. Perf. § 34.) There is no consideration sufficient to support and enforce the agreement of November 2, 1892. (*Fisher* v. *Bush,* 35 Hun, 641.) There is nothing in the complaint to show that it will be of any benefit whatsoever to the plaintiff to have specific performance. (*Aron* v. *De Castro,* 13 N. Y. Supp. 372; 131 N. Y. 651; *Foster* v. *M., etc., R. R. Co.,* 146 U. S. 88.)

VANN, J. The respondents object to the consideration of this appeal upon the merits, because, as they claim, the questions involved have become abstract in their nature owing to the lapse of time. This position is based upon the fact that the period of six months, which is the utmost limit placed by the covenant of the parties upon the right to sell individual stock, had expired before the action was tried, and hence, it is argued, a new trial can afford no practical relief to the plaintiff because the contract cannot now be enforced nor the defendants restrained from disposing of their stock. If this were the exact situation, adherence to precedent might require us to dismiss the appeal, as relief from a judgment for costs

merely has not been regarded as adequate ground upon which to reverse a judgment and grant a new trial. (*People ex rel. Geer* v. *The Common Council*, etc., 82 N. Y. 575.)

But the appellant insists that the liability of himself and his sureties upon the undertaking given to procure the preliminary injunction, presents a practical result to be attained by the appeal, as he may thus be relieved from the payment of damages to the amount of $5,000, the penalty of the bond. An examination of the judgment roll shows that the trial court found, as conclusions of law, that the complaint did not state facts sufficient to constitute a cause of action, and that the contract of November 2nd, 1892, was not enforceable "inasmuch as it was against public policy and contrary to the statute against restraint upon the alienation of personal property," and upon these grounds, among others, directed the complaint to be dismissed. The judgment entered, by appropriate recitals, conformed to the findings, so that there was an adjudication that the plaintiff had no cause of action and that said contract was not enforceable. This leaves the plaintiff defenseless against an action upon the undertaking, which required him to pay to the defendants such damages, not exceeding $5,000, as they might sustain by reason of the injunction, if the court finally decided that he was not entitled thereto. (Code Civ. Pro. § 620.) As the action was brought to procure an injunction, the dismissal of the complaint upon the ground that it did not state a cause of action, is a final decision that the plaintiff was not entitled to the preliminary injunction. (*Musgrave* v. *Sherwood*, 76 N. Y. 194; *Palmer* v. *Foley*, 71 N. Y. 106; *Lawton* v. *Green*, 64 N. Y. 326; *Jacobs* v. *Miller*, 11 Hun, 441.)

Such a judgment establishes the right of the defendants to damages, leaving the amount open to proof, with no limit to the recovery except the penalty named, which was ten times the sum required by statute to authorize a review by the Court of Appeals when this appeal was taken. This large liability incidental to the judgment, and virtually a part thereof, makes the appeal of much practical importance to the plaintiff, aside from the question of costs. While the

damages are unliquidated and might be confined simply to the fees of counsel, they might equal the penalty of the undertaking, especially if it should appear that the market price of stock in the brake company fell while the injunction was in force and never recovered afterward. (*Havemeyer* v. *Havemeyer*, 11 J. & S. 506.) The plaintiff, therefore, may be compelled to pay a large amount of damages, unjustly and without any remedy, unless the court will hear his appeal and decide it upon the merits. We think that the amount, possibly although indirectly, involved, makes it our duty to consider all the questions raised, so that the plaintiff, if he is right in his position, may not, after losing his cause of action against the defendants, be compelled to pay them heavy damages, from no fault of his own, but simply because the courts could not sooner pass upon his rights.

After careful study of the agreement in question we think that it was neither a violation of the statute against accumulations nor a restraint upon trade. What are the facts? Four promoters of a corporation, who owned ninety-nine one-hundredths of its capital stock as tenants in common, agreed in writing to partition their holdings, after first placing in the treasury one-fifth of all the stock to be sold in order to provide working capital for the company. As the amount of the capital stock was large and they did not wish to glut the market by the sale of treasury stock in competition with individual stock, they provided for the deposit of the latter, with a trust company, under the agreement that they would not withdraw the same for six months, except by mutual consent, unless enough treasury stock should be sooner sold to realize the sum of $30,000, in which event any one could withdraw his certificate on five days' notice to the others. No trust was created. The title was not vested in a trustee, unable to sell, with like inability on the part of the beneficiary. No restriction was placed on the power of any stockholder to sell, but he could not deliver the certificates for six months, except in either of the contingencies named. There was no suspension of absolute ownership, because the statute expressly

declares that the "power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed." (1 R. S. 723, § 14.) While this applies primarily to real estate, by a subsequent chapter it is made applicable to personal property also. (1 R. S. 773, § 2.) The test of alienability of real or personal property is that there are persons in being who can give a perfect title. (*Genet* v. *Hunt,* 113 N. Y. 158–172 ; *Nellis* v. *Nellis,* 99 N. Y. 505–516 ; *Robert* v. *Corning,* 89 N. Y. 225, 235 ; *Gott* v. *Cook,* 7 Paige, 521; affirmed, 24 Wend. 641 ; Bolles on Suspension, 2.) Where there are living parties who have unitedly the entire right of ownership, the statute has no application. (*Norris* v. *Beyea,* 13 N. Y. 273, 289.) The ownership is absolute whether the power to sell resides in one individual or in several. If there is a present right to dispose of the entire interest, even if its exercise depends upon the consent of many persons, there is no unlawful suspension of the power of alienation. The ownership, although divided, continues absolute.

The agreement in question, therefore, which expressly reserved the right to sell by mutual consent, did not violate the statute, because there was no time, when an absolute title to the stock, or any part of it, could not have been transferred by the joint action of the four parties to the contract. Nor was the agreement opposed to public policy, for a reasonable regulation as to the mode of selling the stock, so as to prevent the sacrifice thereof, was not a restraint upon trade. As an incident to the contract, making partition of the shares, it was competent for the parties to agree that the stock donated to the corporation, in which they had a common interest, should be first offered for sale. This was no restraint upon the business freedom of the parties, but a promotion of the general interest, by temporarily withholding from the market shares owned by individuals in order to afford a reasonable opportunity to sell shares indirectly owned by all. The protection of the interests of all concerned, by preventing the market from suddenly becoming overcrowded and · ruinously

depressed, was a reasonable, just and honest purpose, which the law does not condemn. There was no evil tendency in the arrangement, as it simply prevented a course of action that would have brought loss both to the common and the personal interests. (*Barnes* v. *Brown*, 80 N. Y. 527, 537; *Hodge* v. *Sloan*, 107 N. Y. 244.)

From what has been said it is evident that a cause of action was alleged in the complaint, for the contract was valid, and the plaintiff had a right to performance by the defendants. How fruitful of results performance would have been, it is unnecessary for us to inquire, as " parties to a contract themselves best know what their expectations are in regard to the advantages of their undertaking and the damages attendant on its failure." (Greenhood's Public Policy, 750.) The sale of treasury stock by supplying means to carry on the business of the corporation and make the enterprise successful, would tend to enhance the value of the stock held by the plaintiff. The impossibility of selling any part of the stock in the treasury, if a violation of the contract were permitted, was expressly alleged in the complaint, and, by the motion to dismiss, was impliedly admitted by the defendants. Without working capital the corporation could not succeed, but with it success was possible. If it could carry on business and make money its stock would become salable, and unless the stock became salable the large interest of the plaintiff would be of no value. The difficulty of admeasuring the damages caused by a breach of the agreement did not affect the right of the plaintiff to make the contract, but furnished a reason for asking a court of equity to enforce specific performance. (3 Pomeroy's Eq. Jur. § 1402; Fry on Specific Performance, 27.) Although performance of a contract relating to personal property may not be demanded as a right, it rests in the sound discretion of the court, where, as in this case, compensation in damages would be difficult, if not impossible, owing to the fact that the matter was in the nature of an experiment, contracted for but not made, so that the result, of necessity, could never be known. (*Matter of Argus Co.*, 138 N. Y. 557, 573;

*Johnson* v. *Brooks*, 93 N. Y. 337.)    While the extent of the damages is uncertain, the fact that some damages were sustained is a fair inference from the concessions made by the defendants at the trial.    (*Barnes* v. *Brown, supra*, 534.)    It follows from what has been said that, subject to the sound discretion of the Supreme Court, the plaintiff was entitled to the preliminary injunction, because it restrained "the commission or continuance of an act, the commission or continuance of which, during the pendency of the action, would produce injury" to him.    (Code Civ. Pro. § 603.)

Although we thus reach a result favorable to the plaintiff, we do not award him a new trial, as the time for specific performance has expired.    This was one of the grounds upon which the complaint was dismissed, and, had it been the only ground, the judgment of the trial court might not have been disturbed, for the way is still open to the plaintiff to recover in an action at law such damages as he can establish, and that is the only affirmative relief that is left to him.    As a modification of the judgment will afford him the relief from damages and costs that we think he is entitled to, our adjudication will be in that form.    (Elliot's Appellate Procedure, § 567.)

The judgment, therefore, should be modified by adjudging that the plaintiff was entitled to a preliminary injunction, striking out all allowances of costs by the courts below and basing the dismissal of the complaint solely on the ground that, by reason of the lapse of time, a decree, if granted, could not be carried into effect, and, as thus modified, affirmed, without costs.

All concur.

Judgment accordingly.