WILLIAM C. NEWMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6530. Promulgated January 24, 1928.

*Charles H. Garnett, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

OPINION.

GREEN: The first and third allegations of error relate to the disallowance as a deduction from income of an amount representing an aliquot part of cost of certain unproductive leases. This Board has held in the *Appeal of Grosvenor Atterbury*, 1 B. T. A. 169, that the cost of, or bonus paid for, a lease may be amortized and an aliquot part thereof deducted annually over the life of the lease. We have not thought it necessary to set out in detail all of the data with reference to each lease and have contented ourselves with setting forth the total cost thereof and an amount which represents the sum of the amounts properly allocable to each year in the case of each lease, the total of which is, for the year 1919, $4,008.05, and for the year 1920, $5,029.22. The petitioner is entitled to deduct these amounts in the computation of his income for such years.

The second and fourth allegations of error relate to the deductions for depreciation to be allowed upon two sets of drilling tools and a certain truck and trailer for both of the years in question. Our findings of fact dispose of these issues.

The fifth allegation of error relates to the disallowance of certain deductions for bad debts and a mathematical error, the result of which was to increase the net income by $986.98 instead of reducing it by that amount. In any event, the petitioner's net income should be reduced by the amount of $986.98.

With reference to the account against Bingham Brothers, the facts are that the petitioner in 1920 determined that there was grave doubt

as to the legality and justice of this item and charged it off as a bad debt and totally abandoned his claim against Bingham Brothers. He regarded his action in this respect as equivalent to treating this as an expense item. We think that the petitioner, having expended the amount of money which he seeks to deduct (having totally abandoned his claim against Bingham Brothers), and having also, by reason of the change in conditions, entirely lost the use of the property for which the money was expended, is entitled to deduct the amount thereof.

With reference to the account against the Western Rope & Manufacturing Co. the evidence is far from clear and we can not determine therefrom that this debt became worthless in 1920, and we therefore approve the action of the Commissioner in disallowing it as a deduction in that year.

The sixth allegation of error relates to the inclusion in income of the amount of $426,252.14 which the Commissioner determined to be the net profit realized by the petitioner upon the exchange of assets for stock, which stock the parties agree had a fair market value of $2 per share. The petitioner's contention is that the realization of profit was delayed and deferred by reason of the pooling agreement and that in 1920 he derived no income from this transaction. The respondent's contention is, first, that such a contract is void as against public policy, and second, that in any event there was an exchange of property for property, that the property received had a fair market value, and that consequently the amount of the gain must be measured and included in income. The Commissioner's first position requires us to assume that the contract, void as against public policy, may not be considered in determining actual income. Assuming, but not deciding, that such is the law, we are still unable to agree with the respondent in his contention as to this case. There are many cases in which the effect of a pooling agreement similar to the one here under consideration has been passed upon by the courts, and their conclusions with respect to the validity thereof are far from harmonious. One group of cases, of which *Fisher* v. *Bush*, 35 Hun (N. Y.) 641, is an example, holds that an agreement between the stockholders of a corporation not to sell or transfer their shares without the consent of all the parties thereto, is in restraint of trade and contrary to public policy and is therefore void if there is no other consideration than the mutual promises of the stockholders. See Fletcher's Encyclopedia of Corporations, vol. 6, sec. 3761, p. 6264. That group of cases is best distinguished from the one here under consideration by the fact that the pooling agreement, which the respondent seeks to have us hold void as against public policy, was a condition

precedent to the exchange of property for stock and does not arise out of mutual promises made after the acquisition of stock. Another group of cases takes the opposite view. Notable examples of these cases are, *Blue Mountain Forest Association* v. *Borrowe*, 71 N. H. 69; 51 Atl. 670; *Longyear* v. *Hardman*, 219 Mass. 405; 106 N. E. 1012; *Smith* v. *San Francisco & N. P. Ry. Co.*, 115 Cal. 584; 47 Pacific 582; *Winsor* v. *Commonwealth Coal Co.*, 63 Wash. 62; 114 Pacific 908; and *Williams* v. *Montgomery*, 148 N. Y. 519; 43 N. E. 57. A careful examination of these authorities leads us to the conclusion that this pooling agreement is not void as against public policy.

Having disposed of the respondent's contention that the pooling agreement was void, we come next to the question of its effect upon taxable income. The petitioner contends that thereby the realization of income is deferred and the respondent contends that, viewing the transaction as a whole, it was an exchange of property for property which had a fair market value and that income was realized therefrom. The parties, by their stipulation that at the time of its receipt by the petitioner the stock had a fair market value of $2 per share, have eliminated the most difficult part of the question. Section 202 (b) of the Revenue Act of 1918, in so far as it is here material, reads as follows:

When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; * * *

Clearly there was an exchange of property for property the value of which the parties have stipulated was $2 per share, and income was realized to the extent that the fair market value of the property received exceeded the cost or other basis of the property exchanged. See *Appeal of Wallis Tractor Co.* 3 B. T. A. 981. It should also be noted that the exchange was between the corporation and the petitioner and that the pooling agreement was between stockholders and that they were entirely separate agreements.

The last allegation of error relates to the computation of the tax upon the income derived from several sources. The respondent has denied all of the allegations relating to this assignment of error. The petitioner offered no proof in support of his assignment, and we, accordingly, confirm the Commissioner's actions in this regard. Apparently the Commissioner's action is in accord with article 13 of Regulations 45; the decision of the District Court of the Northern District of Texas in *Fowler* v. *United States*, 11 Fed. (2d) 895; and the decision of this Board in *Appeal of M. Fowler*, 1 B. T. A. 1212.

> *Judgment will be entered after 20 days' notice, under Rule 50.*